**STRODE et ux. v. SILVERMAN.**

No. 2790.

Court of Civil Appeals of Texas. Waco.

Feb. 26, 1948.

Rehearing Denied March 18, 1948.

LESTER, Chief Justice.

This is a suit by Mrs. Sarah Silverman to set aside a judgment entered in an adoption proceeding in which J. W. Strode and wife, Mrs. Margaret Strode, were granted leave to adopt Elaine Silverman, the minor daughter of Mrs. Silverman.

The record is quite voluminous and the statement of facts contains more than 350 pages, but it shows without dispute that in the summer of 1944, Mrs. Silverman had been abandoned by her husband; that she was left in destitute circumstances and in bad health and with two small children, Richard Silverman, aged two and a half years, and Elaine Silverman, six months of age. Mr. and Mrs. J. W. Strode, who reside in Mexia, Texas, visited Mrs. Strode's sister in Wichita Falls, and while there they met Mrs. Silverman, who had an apartment with Mrs. Strode's sister. While there Mrs. Silverman either told them or they learned about her husband leaving her and the children and about the destitute circumstances that Mrs. Silverman was then confronted with. Mrs. Strode testified that Mrs. Silverman was greatly worried and sick at the time. Mrs. Strode offered to take the children home with her for a visit but Mrs. Silverman refused. A few days later they saw Mrs. Silverman in Dallas and learned that she was sick and would have to undergo a major operation and they knew that she would not be able to make a living and take care of her children. They again offered to take the children home with them and the mother again refused to let them go, but after she was operated upon and while she was in the hospital she wrote Mr. and Mrs. Strode to come and get the children, which they did, and kept them for six or eight weeks, during which time Mrs. Silverman contributed to their support. The Strodes carried the children back to their mother and told her that they couldn't keep the children longer because they were becoming attached to them. Mrs. Strode testified that she asked Mrs. Silverman to permit her to take Elaine back home with them as she was very fond of her, to which Mrs. Silverman agreed, but they did not take her on that occasion for the reason

O. F. Watkins, of Mexia, and Carl Cannon and A. M. Blackmon, both of Groesbeck, for appellants.

W. W. Mason, of Mexia, and L. L. Geren and B. L. Bradley, both of Groesbeck, for appellee.

that they (the Strodes) wanted a better understanding with the mother, in that they wanted her to agree that they could have Elaine always. A few days later Mrs. Silverman wrote the Strodes that the baby was sick and she could not take care of her and for them to come and get her; that about October 1, 1944, they went for the child and she has been in their home ever since; that before she went for the child she wrote Mrs. Silverman and told her that she did not want to take the child unless she would give Elaine to her to keep; that on the occasion that she took the child there was nothing said about their adopting her and that question had not been mentioned prior thereto. Mr. Strode testified also that it was not mentioned at that time and was not mentioned until about six months later, when he took the question up with Mrs. Silverman and she would not consent to it, and he testified that he discussed the question with her about every five, six or seven months thereafter but she never did give her consent. Mrs. Strode testified to receiving a letter from Mrs. Silverman, in which she told her that they could have Elaine always but that the letter did not mention anything concerning the question of adoption.

On August 5, 1947, Mr. and Mrs. Strode filed in the district court for the 77th Judicial District of Limestone County, Texas, their petition for the adoption of Elaine, setting up that:

"(2) That Herbert Silverman is the father of said child and that Sarah Silverman is the mother of said child. That the father of said child has not been heard of for more than three years, and that neither his wife, the said Sarah Silverman, nor your petitioners know the whereabouts of said father. That the said Sarah Silverman, on or about the first day of August, 1944, which is more than two years prior to the filing of the petition herein, placed said child in the care and custody of said petitioners because of the fact that she was unable to care for and support said child, and during all of said time the father of said child has been in parts unknown to the mother and to petitioners and has not contributed anything to the care and support of said child; that the said Sarah Silverman resides in Harris County, Texas, and is not financially able to or desirous of caring for, supporting and educating said child, and on said August 1, 1944 the said Sarah Silverman permanently surrendered said child to your petitioners and left said child to the care, custody and parental authority of your petitioners, and since said August 1, 1944 the said Sarah Silverman has not contributed anything to the care and support of said child; that by reason of the facts herein alleged by your petitioners said child is a proper subject for adoption by said petitioners, and that said petitioners love said child and are able and willing to care for and raise said child properly and give it the benefit for proper educational advantages, and that the home of petitioners is suitable home for said child, and that said child has lived continuously with petitioners in their said home for more than two years past, having lived continuously with petitioners in their home since August 1, 1944.

"(3) That the written consent of Clarence Ferguson, County Judge of Limestone County, Texas, is attached hereto marked Exhibit 'A' and made a part hereof.

"(4) Petitioners further show to the court that in the case the court should grant the petition for the adoption of said child, it would be to the best interest of said child to have its name changed, and that its name should be changed from Elaine Silverman to Elaine Strode."

The court appointed an investigator and set the adoption proceedings for hearing on August 13th. The County Judge of Limestone County had consented to such adoption and had executed an instrument in which he evidenced the same in writing, which was attached to the petition, but they did not have the written consent of Mrs. Silverman, nor did they give her any notice of any kind whatsoever of the pending proceeding. On August 13th the matter was heard, the petition for leave to adopt was granted and the name of the child was changed from Silverman to Strode.

Upon learning that the adoption judgment had been entered Mrs. Silverman immediately filed a suit to set the judgment aside, setting up several grounds for the relief sought, among some of them being: (1) that she had not given her written consent to the adoption; (2) that she had not abandoned said child; (3) that she was not served with process or notified in any manner of such proceeding; and (4) that the same was had in vacation. After a hearing before the court without the aid of a jury, the court rendered judgment in which he set aside the judgment of adoption, but made no provision in the judgment concerning the care and custody of said child and she is and has been since said time in the home of Mr. and Mrs. Strode.

From the facts revealed by the record we are of the opinion that the court was justified in setting aside said judgment upon each of the grounds set out above. Adoption in this state is permitted by the statutes only and such right is prescribed by Article 46a of Vernon's Ann.Civ.Stats. Section 6 thereof provides: "Except as otherwise amended in this Section, no adoption shall be permitted except with the written consent of the living parents of a child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, and such parent or parents so abandoning and deserting such child shall not have contributed to the support of such child during such period of two (2) years, then in such event it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence, or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence."

It is undisputed that the mother did not give her written consent for her child to be adopted, so that feature of the case will not be discussed further.

Comes next the question as to whether Mrs. Silverman voluntarily abandoned her child and deserted it for a period of two years and left it to the care, custody, control and management of the Strodes, and not contributing to its support during such period of two years.

Again referring to the testimony of Mr. and Mrs. Strode, same shows that they knew before they took Elaine the second time that Mrs. Silverman had been left without funds, clothing and food and that she was almost in destitute circumstances; that she had been in the hospital and was recovering from a major operation and that the child was sick and that she was not able to work and take care of her sick child at the same time. Mrs. Silverman testified that her husband got into some trouble and deserted her and the two children and left them without funds; that she was sick and in bed for about two weeks after he left, and in about three weeks she went to Dallas to her sister and shortly after her arrival in Dallas she went to the hospital for the removal of a tumor; that she was in the hospital and in bed at her sister's for about four weeks, and from the time her husband deserted her she and her children were dependent upon her sister and relatives; that while she was in Wichita Falls she had an apartment at the residence of Mrs. Strode's sister, and after her husband deserted her Mr. and Mrs. Strode visited there and they learned about her condition and offered to take the children home with them for a visit, but she refused; that after she went to Dallas they came by to see her again and offered to take the children but she still refused; but after her operation and while she was in the hospital she wrote the Strodes that they could come and get the children for a visit, which they did and kept them from six to eight weeks, and brought them back some time during the month of October; that Mrs. Strode offered to take Elaine back with them for a visit, telling her that she was very fond of her, but she refused to let the child go because she had secured employment and thought she would be able to keep the two children together and support them both; that Mrs. Strode told her when she refused to let her take Elaine back with

them that when she felt that Elaine could visit them that they would like to take care of her, and after going home she wrote letters to the same effect; that a few days thereafter Elaine became sick and she saw that she was unable to care for her and work too, so she wrote and told Mrs. Strode she could have her.

■■ From the foregoing facts we do not see how the conduct on the part of Mrs. Silverman in permitting the Strodes to take her child into their home under the circumstances could be considered as any evidence of a voluntary abandonment of her child. As far as this record shows, what she did was forced upon her by circumstances over which she had no control and for which she was not responsible. She knew the child was sick and had to have proper care and she knew that she was unable to give it to her, and the Strodes had voluntarily offered to take the child into their home and care for her, so she was compelled, for the welfare of her child, to do that which she had often refused to do and that was to part with her child. Faced with a matter of most serious concern to her and no doubt in a state of desperation, we are unwilling to say that she did more than any mother who loved her child would have done under similar circumstances. Voluntary abandonment, as used in the adoption statute, does not include an act or a course of conduct pursued by a parent which is done through force of circumstances or dire necessity, but it is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child. Platt v. Moore, Tex.Civ.App., 183 S.W.2d 682.

■ Now, as to whether the conduct of Mrs. Silverman since the Strodes took the child the second time could be construed as implying a voluntary abandonment or a desertion or that she did not contribute to the support of her child for a period of two years during the time she was in the Strode home, we will first refer to the testimony of the Strodes. Mr. Strode testified that it was the custom of Mrs. Silverman to send presents or money on the child's birthday and on Christmas, Mother's Day and Father's Day of each year, and that if she failed to do so on any occasion he could not recall it; that she sent money and gifts all along, but he estimated the total amount not to exceed the sum of $75 during the entire period, and said that none of such money or presents were sent as contributions for the support of said child. This is also the contention of Mrs. Strode and she estimated the amounts sent for all purposes during the entire period from the time they took both of the children up to the date of the trial to not exceed the sum of $70 or $75. In answer to questions propounded to her she made the following answers:

"Q. All right, how much did she send from January 1, 1945, to January 1, 1946? A. Maybe forty or fifty dollars for gifts.

"Q. How much was sent from January 1, 1946, to January 1, 1947? A. I don't know.

"Q. Would you say she did not send any during that year? A. I don't know.

"Q. You just don't know? A. That's right.

"Q. From January 1, 1946, to January 1, 1947, did she send any gifts? A. She would send money as gifts if that is what you are talking about.

"Q. From January 1, 1947, to August 5, 1947, did she send any gifts? A. She sent a bathing suit.

"Q. Ma'am? A. She sent a few, one or two."

She testified that Mrs. Silverman, in addition to giving money and presents to said child, she also gave money and presents to their adopted daughter, Willene, as well as some presents to herself. She testified that the money sent by Mrs. Silverman was usually sent to her or in event that it was sent to her husband that he would in turn give it to her. That some of the gifts and money were given to the child by Mrs. Silverman on occasions when she visited her child; that Mrs. Silverman kept in constant contact with the child and had written

many letters and put through several telephones calls concerning her daughter.

Concerning the contributions made to her daughter, Mrs. Silverman introduced her cancelled checks, made out to the Strodes, which were given at and subsequent to the time they took Elaine into their home the second time. The total amount of these cancelled checks was $95. In this amount was not included presents or money that she gave when she visited her child. One of these checks is for the sum of $25, which was given at the time the Strodes took the child the second time. The child was sick on this occasion and this money was given for the purpose of purchasing medicine for her. The other checks are in amounts as follows: two for $5 each and the balance in the sum of $10 each, and bear dates from October 15, 1944 up to and including December 28, 1945. Mrs. Silverman said that at times she did not have a bank account and would send money by post office money orders; that she lost or misplaced her receipts in moving; that she attempted to get copies of said receipts but was unable to do so because she could not give the exact dates; that she continued to contribute just as she had done when she had money in the bank. She testified that in addition to what she contributed she agreed to permit Mr. Strode to claim her baby as a dependent so as to lessen the amount of income tax he would have to pay the government. On October 31, 1945, Mrs. Silverman wrote a letter to Mrs. Strode, which included the following: "Oh, yes, I have been waiting to tell J. W. that he is to consider Elaine on his income tax for this year, because I changed mine to read as one dependent. I know it will mean a lot on J. W.'s return and I believe he should take it instead of me." She says that her permission was given at the request of the Strodes. Mrs. Strode does not say that they requested it but says that it was mentioned. At any rate, Mr. Strode, as a result of said agreement, was permitted to and did deduct the sum of $500 from the total amount of his income for the year 1945 and succeeding years, and was thereby required to pay a less amount to the government than he would have otherwise had

to pay; but as a result of said agreement Mrs. Silverman testified that an additional sum of $100 was deducted from her salary each year. She also testified that the checks and money given to the Strodes were not given by her just to buy presents but they were given to them to use and do with as they saw fit, and she considered at the time they were given that they were contributions for the support of her child; that she sent all she could spare; that she had supported her son Richard during the entire period; that as she would get a raise in salary the cost of living would rise, and she gave a detailed account of her salary and what it went for. She says that she visited Elaine every three or four weeks before she went to Houston, which was about April, 1947, and then she did not get to visit as often as she had prior thereto, and sometimes when she would write or phone to see if it was convenient with the Strodes for her to make a visit it was not always convenient for them to have her come, but when she did go, she always took Richard along so the children could be together and know each other.

The record reveals that the Strodes and Mrs. Silverman were on the friendliest terms; that they corresponded with each other very frequently, sometimes two or three times a week. Several letters written by Mrs. Strode to Mrs. Silverman were introduced in evidence, and she always began the letters: "Dear Sarah and Richie" and ended with: "Love always" or "Love to both." There were only two letters written by Mrs. Silverman introduced but they were in the same friendly tone as the letters written by Mrs. Strode. Two of these letters from Mrs. Strode were written on July 15th and 29th, 1947, respectively. So it is readily observed that Mrs. Silverman had no intention of abandoning her child at any time and surrendering its permanent care and custody to the Strodes, and this they are bound to have known, as they say she had discussed getting the children together so they would grow up and know each other. Another reason why this conclusion is reached is based upon the close and friend-

ly relationship that existed between her and the Strodes. She had a right to feel that she could take her baby when she got able to take care of it. On July 8th Mrs. Silverman wrote Mrs. Strode a letter. She began: "Dearest Margaret and J. W." and ended by saying: "Kiss Elaine for me" and signed it: "Love, Sarah and Richie", meaning herself and her son Richard. In this letter she wrote: "I expect to get an apartment real soon where there is a day nursery in the courts. These courts are in an area of eight blocks and house some thousand people. I will have a bed-room apartment with stove and refrigerator furnished. That means I have to buy everything else. I am really excited."

Mrs. Strode wrote Mrs. Silverman on July 15th and also on the 29th, which was before the adoption order was entered, but she did not mention the contemplated adoption proceedings. The Strodes learned that Mrs. Silverman had gotten the apartment and she had either written or phoned that she wanted her child to visit her. Then the adoption proceedings were filed and heard, without any process or notice to Mrs. Silverman, and the first notice she had of the petition being filed and the judgment being entered was a letter written by Mrs. Strode, dated August 14th, the next day after the judgment was entered, which reads in part: "Received your letter and thought I had better write and tell you we weren't going to be home this weekend. Glad you and Richard are enjoying your apartment. Sarah, it will be impossible for Elaine to come down there now. You know how nervous and easy upset she is. The court granted us adoption of her. I hope and pray after you think it over you will know it was for her. I could stand to be hurt but I can't stand to see her hurt. I want you and Richard to always feel welcome at our house as you have always been and we will all be one."

A judgment rendered under such circumstances cannot be upheld. Poss v. Anderson, Tex.Civ.App., 188 S.W.2d 726, 727; Pearce v. Harris et al., Tex.Civ.App., 134 S.W.2d 859

Another reason why the judgment is invalid is that at the time the petition for leave to adopt was filed and at the time it was heard and judgment rendered, there was no regular or special term of court in said county in session but it was in adjournment during the entire period. Article 1915, Vernon's Ann.Civ.Stats., provides: "Judges of the district courts may in vacation, by consent of the parties, exercise all powers, make all orders, and perform all acts, as fully as in term time, and may, by consent of the parties, try any civil case, except divorce cases, without a jury and enter final judgment. All such proceedings shall be conducted under the same rules as if done in term time; and the right of appeals and writ of error shall apply as if the acts had been done in term time."

The Strodes contend that the judgment is valid in that Judge Ferguson, who was County Judge of Limestone County at the time, consented to the adoption; that while his consent was not requested and he did not expressly give his consent that the matter could be heard in vacation, but the evidence showing that it did not make any difference to him whether the case was tried in vacation or not, that the said judgment should be upheld. In the petition for adoption Mrs. Silverman was charged with voluntarily abandoning and deserting her child for a period of two years and with not contributing to its support during such time. She was one of the most interested parties that could have been connected with the proceedings. Her parental rights had not been prior thereto terminated by a court of competent jurisdiction and she was therefore a necessary party to such proceedings; and since she had not voluntarily abandoned and deserted her child and had not failed to contribute to its support for a period of two years, it would make no difference how positive or definite the County Judge had agreed to the hearing and the judgment. He did not have the authority to bind Mrs. Silverman in any such manner and she had a right to come into court and have the same set aside for lack of jurisdiction upon the part of the court. Citi-

zens State Bank v. Miller, Co. Judge, Tex.Civ.App., 115 S.W.2d 1183; 25 T.J., p. 429, sec. 62; Trabue v. Ash, Tex.Civ. App., 200 S.W. 415; Sinclair Refining Co. et al. v. McElree, Tex.Civ.App., 52 S.W.2d 679; Glasscock v. Pickens et al., Tex.Civ. App., 73 S.W.2d 992.

■ The Strodes contend that the court committed error in refusing to permit certain witnesses to testify that they enjoyed a good reputation for maintaining a good, Christian home, were outstanding citizens in Mexia and were financially able in every way to take care of and support said child. Mrs. Silverman's counsel objected to this testimony but told the court, for the benefit of the record, they would admit such facts. After reading the authorities cited in support of such contention, we are of the opinion that they are not in point. They are cases in which the care and custody of the child was involved, and in such cases the fitness of the parties seeking the care and custody of a child is a paramount factor to be considered and the controlling question that concerns the court is what would be for the best interest and welfare of the child. But this was a suit by Mrs. Silverman, based upon certain invalidities, to set aside a judgment in which the Strodes were granted leave to adopt her child. The custody of the child was not disturbed by the judgment and she is at this time in the home of the Strodes. Therefore, the trial court did not commit error in refusing to admit such testimony.

On January 20, 1948, the court granted a restraining order against appellee and others for the purpose of protecting the jurisdiction of this court only, and when the jurisdiction of this court over this appeal ceases, the purpose for which the order was granted will have been served and it shall be of no force or effect thereafter.

Believing that the judgment entered in the adoption proceedings should be set aside upon all the grounds discussed, the judgment of the trial court is therefore affirmed.