### ROSS et al. v. ORR.
### No. 4565.

Court of Civil Appeals of Texas. El Paso.
May 12, 1948.

As Corrected on Denial of Rehearing
June 2, 1948.

Earl R. Parker, of Dallas, for appellants.

Wade, Ford, Duke & Melton, Leland M. Johnson and Harvey C. Ford, all of Dallas, for appellee.

McGILL, Justice.

This is a child custody case.

By application for a writ of habeas corpus filed in the 44th Judicial District Court of Dallas County, appellant sought to recover from appellees the custody of Donnie Mack Jones, a boy approximately six and a half years of age at the time of the trial. The child is the son of appellant Betty Ross and her former husband Euless (Eulis) Jones. Appellant Betty Ross was designated as the relator and appellees as respondents in the trial court, and the parties will be so referred to.

Relator alleged that shortly after the birth of the child on April 5, 1941, Euless Jones deserted and abandoned her and the child and about two months thereafter she placed the child with respondents, who lived at 1524 Cigar (Seegar) Street, Dallas, Texas, and for a few months paid them for boarding him, when she became unable to pay for his board and respondents then agreed to maintain him for her until further arrangements might be made for his care; that in the early fall of 1942 respondents moved from said address and concealed their whereabouts and the whereabouts of the child from her and she was unable to locate them or the child until about April 1, 1947; that she discovered them living at 121 West 8th Street in Dallas and contacted respondents and requested the return of her child, which they refused to do; that respondent Willie Mae Orr told her they had not adopted the child and would not do so without her knowledge and consent; that about October 7, 1947, she discovered "from the records" that respondents had adopted the child in cause No. 1628-A on September 8, 1947; that such adoption was without the knowledge or consent of her or the child's father; that a certain written instrument dated April 22, 1942, relied on by the court in the adoption proceedings was insufficient to show her consent, essential to confer jurisdiction on the court; that the home where the child resided with respondents was unfit and improper for his best interests and welfare for reasons not necessary to reiterate, and that she and her present husband have a good income and a suitable home and that the best interests of the child would be served by return of him to her custody. Respondents answered by plea in abatement and a plea in bar, and subject to such pleas, a general denial. The plea in abatement set up a judgment granting respondents leave to adopt the child rendered by the 14th Judicial District Court of Dallas County, in cause No. 1628-A, and alleged that the present suit was a collateral attack on such judgment. The plea in bar alleged that by reason of such judgment respondents were the legal parents and custodians of the child. Trial was to the court. After relator had rested the court sustained respondents' motion and rendered judgment that relator take nothing and that her cause of action be dismissed.

Appellants' points urge the invalidity of the decree of adoption because it was rendered without the written consent of appellant, Betty Ross, mother of the child, in violation of Section 6 of Article 46a, Vernon's Ann.Civ.St. It is contended that the written instrument above referred to is insufficient to comply with the statute because it was executed by the mother long prior to the filing of the adoption proceeding, and it is not a definite, unconditional, unequivocal consent to an adoption, but is an executory contract by which the mother agreed at some later time to execute a consent to adoption.

In our opinion a proper disposition of the case does not require a determination of whether the instrument in question was sufficient to evidence the mother's written consent to the adoption as required by the statute, and we decline to pass on this question. The statement of facts which appellants have brought up contains none of the oral testimony, and only the following documentary evidence: The petition for adoption of the child filed by ap-

pellees in cause No. 1628-A in the 14th Judicial District Court of Dallas County, to which is attached as evidencing her consent to the adoption an affidavit made by appellant Betty Ross, then Betty Jones, or Betty Jones Lane, before a Notary Public of Dallas County on April 28, 1942; the Judge's fiat appointing the Chief Probation Officer of Dallas County to investigate the matter and make a written report of his findings; the report of such officer and the judgment in cause No. 1628-A in the 14th Judicial District Court of Dallas County dated September 8, 1947, granting appellees leave to adopt the. child. The Statement of Facts does not reveal by which party these documents were introduced, but since the judgment recites that after relator had, rested the court sustained respondents' motion for judgment, we assume they were introduced by relator.

A reproduction of the affidavit referred to is deemed necessary:

"Before me the undersigned authority on this day personally appeared Betty Jones Lane who being by me duly sworn on oath says:

"That she is the mother of Donnie Mack Jones who was born of a union between herself and one Eulis Jones on April 5, 1941. That she was lawfully married to the said Eulis Jones prior to the birth of said child. That prior to the birth of said child her husband deserted and abandoned her; that she has never heard from him and does not now know his whereabouts. That heretofore to-wit about the month of April, 1941, affiant instituted a divorce proceedings against her said husband and afterwards secured a divorce.

"That when said child was an infant of about two months, she, being unable to care for him, placed the same with Wayman Orr and wife, Willie Mae Orr, who reside at 1524 Seegar Street.

"Affiant says that it is necessary for her to work long hours and therefore impossible for her to care for said child in the proper manner. That she has often visited said child in the home of the said Wayman Orr and wife Willie Mae Orr and is well pleased with the manner in which they are caring for him. That she is convinced the said Wayman Orr and Willie Mae Orr have become devoted and attached to said child and they have expressed a desire and intention of lawfully adopting him and conferring upon the said Donnie Mack the name of Orr, together with all the legal rights and privileges of a lawfully adopted child.

"That she has consented to waive her natural rights as to said child in favor of the said Wayman Orr and Willie Mae Orr. That she is anxious that said child be so adopted by the said Wayman Orr and Willie Mae Orr. That she has investigated the home-life of said prospective adopting parents; that the husband, Wayman Orr is steadily employed at the North American Airplane Plant, averaging a monthly salary in the neighborhood of $150.00. That she is convinced that the said Wayman Orr and Willie Mae Orr will provide said child with a comfortable home and rear him in a christian atmosphere, giving him all the advantages within their means and ability.

"Affiant further says that she is making this affidavit for the purpose of inducing the said Wayman Orr and Willie Mae Orr to continue caring for said child without charge as they have in the past 10 months and she realizes they are relying fully upon the truth of the facts herein stated and the genuity of her intentions in executing this instrument. Affiant further realizes that the said Wayman Orr and Willie Mae Orr would not care to longer keep said child and become further attached to him if they contemplated or expected in the future to be molested by this affiant or anyone at her instance and under her direction.

"Affiant further says that she has agreed to and with the said Wayman Orr and Willie Mae Orr that she will, when called upon, execute such waivers of custody or other instruments as might be required by law to enable the said Wayman Orr and Willie Mae Orr to fully and legally adopt said infant above named.

"(Signed) Betty Jones."

Relator's application for the writ of habeas corpus and respondents' general denial put in issue the question of

which custody would best serve the interests of the child. The judgment that relator take nothing impliedly found that the best interests of the child would be served if he were left in respondents' custody. De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, loc. cit. 695.

There is no evidence attacking this implied finding, and the judgment is therefore conclusive against appellants. It is true that respondents did not affirmatively plead that relator was unfit to have the care and custody of her child, or that she had voluntarily relinquished her natural and statutory right to have such care and custody, and that it has been said that such pleading and proof is necessary as a basis for the exercise of judicial control over the minor where such natural right to custody has not been "forfeited by misconduct or lost through misfortune." Davis v. Sears, Tex.Com.App., 35 S.W.2d 99, loc. cit. 102, 1st col. However, it has been held that pleadings are of little importance in child custody cases, and that the trial court's efforts to exercise broad equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rules. Williams v. Perry, Tex.Com. App., 58 S.W.2d 31, loc. cit. 33; Murphey v. Walker, Tex.Civ.App., 209 S.W.2d 371, loc. cit. 374, and authorities there cited.

■ Relator is bound by the admissions contained in her pleading. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W. 2d 238, loc. cit. 245 (10-13).

■ We think it affirmatively appears therefrom that she had voluntarily relinquished such care and custody to respondents. She alleges that she was unable to continue compensating respondents for his board after a few months, and that they agreed with her to maintain him for her until further arrangements might be made for his care. She alleged no definite time when it was contemplated such arrangement should be terminated. It appears that this situation continued with her

consent at least until the fall of 1942, more than a year after she had placed the child in respondents' possession. It further appears from this record that she took no judicial action to recover custody of her son until more than six years after she voluntarily delivered him to respondents, although she alleged that she had known of his whereabouts and the whereabouts of respondents for more than six months prior to the filing of this suit. Surely the reasons for the exercise of judicial control are just as cogent in this situation as where there has been a voluntary relinquishment of custody evidenced by a written instrument. Those reasons are aptly stated in Dunn v. Jackson, Tex.Com.App., 231 S.W. 351, 353. They are that where a parent has surrendered his natural right to custody to a third person "who performs the duties incumbent upon him as the natural guardian, a new condition is created which inures to the benefit of the child. The law does not prohibit such a transfer by the parent, but, on the contrary, allows the child to reap the benefit therefrom, and upon a habeas corpus proceeding by the parent to regain custody of the child the paramount interest of the child becomes the dominant issue. Legate v. Legate, 87 Tex. 248, 28 S.W. 281."

We are also of the opinion that the trial court could properly consider the above quoted affidavit in determining whether there had been a voluntary relinquishment of custody by relator since she referred to it in her pleading and introduced it in evidence. It is ample to warrant an implied finding that there had been a voluntary relinquishment of custody by her, (Davis v. Sears, supra) although it may be insufficient to show an abandonment so as to dispense with the necessity of the parent's written consent under the adoption statute supra. Platt v. Moore, Tex.Civ.App., 183 S.W.2d 682, wr. ref., W.M.; Strode v. Silverman, Tex.Civ.App., 209 S.W.2d 415.

We affirm the judgment.