### In re ADOPTION OF Gloria Saraphin ANDREWS, a Minor.

#### No. 8167.

Court of Civil Appeals of Texas, Amarillo.

July 26, 1971.

Rehearing Denied Aug. 23, 1971.

---

Sturgeon, Sturgeon & Martindale, Aaron Sturgeon, Pampa, for appellants.

Frank P. Dove, Panhandle, for appellees.

JOY, Justice.

This is an appeal by the natural parents of a minor from an order of the trial court granting adoption of the minor to appellees. Affirmed.

Appellants, Mr. Clyde Andrews and his wife, Mildred Andrews, were residents of Fort Myers, Lee County, Florida, at all times relevant to this action until they took up residence in White Deer, Texas, after receiving notice of this adoption proceeding.

This case was instituted in the District Court for the 100th Judicial District, Carson County, Texas, on August 6, 1970,[1] by the appellees, Mr. Jack L. Dupy, Sr. and his wife, Bernice Dupy, for the adoption of one of the Andrews' children, a child of thirteen years and three months, named Gloria Saraphine Andrews, and also for a judgment changing her name to Gloria Lynn Dupy. Appellants were served in Lee County, Florida, on August 20, with non-resident personal notice of the adoption petition. Appellants consulted an attorney in Florida who prepared and mailed an "Answer" for them (signed by appellants, not signed by the attorney) denying certain of the allegations in the appellee's petition for adoption. On September 17, the district court, having received notice of the consent of the county judge to the adoption under Art. 46a, Section 6(a), Vernon's Ann.Civ.St., ordered an investigation under Article 46a, Section 2, by Mrs. Shirley White of the prospective adoptive parents and the child's suitability for adoption. The adoption hearing was set for October 19. On October 2, an attorney from Panhandle, Texas, Mr. Marshall Sherwood, by letter requested that the hearing date be reset for a later date. The letter stated that although Mr. Sherwood was not yet employed in the matter, he did intend to make an investigation into the case to determine whether he would become so employed—and that such investigation could not be completed before the date set for the adoption hearing, October 19. Pursuant to Mr. Sherwood's request, the court reset the hearing for November 23. Then Mr. Aaron Sturgeon, Pampa, Texas, attorney, advised the court by mail on November 19 that he was not currently employed by Mr. and Mrs. Andrews but that in all probability he would become so employed for the hearing, if the court

1. All dates appearing herein are for the year 1970 unless otherwise designated.

chose to allow the Andrews an additional extension of time in which to prepare for such hearing, or for purposes of appealing any adverse ruling.

The adoption hearing came on to be tried on November 23, and the Andrews appeared before the court without the aid of counsel, explaining that they had been unable to engage counsel from the time of their arrival in Texas in September until this hearing date because all of the attorneys with whom they had been in contact "did not handle those kind of cases (adoption)." The court denied the Andrews' oral motions for an extension of time in which to prepare for the hearing. After hearing the evidence, the court entered an order permitting Mr. and Mrs. Dupy to adopt the child involved and to change her name to the name requested, Gloria Lynn Dupy. After the trial court had pronounced its judgment, the Andrews stated that they wanted to appeal from the ruling.

Mr. and Mrs. Andrews then engaged Mr. Sturgeon, and have perfected appeal to this court.

The Andrews, appellants here, assert two points of error: (1) No evidence or insufficient evidence to support the trial court's finding that the appellants voluntarily abandoned and deserted Gloria for a period of more than two years and left her to the care, custody, control and management of other persons; and (2) no evidence or insufficient evidence to support the trial court's finding that appellants failed to contribute substantially toward the support of Gloria for more than two years, commensurate with their financial ability.

We will deal only with the first point of error, as to sustain the trial court judgment under Article 46a, Section 6(a), it is necessary only that we find sufficient evidence to support the court's findings on one of the two points, abandonment for more than two years or failure to contribute to support for two years.

Article 46a, Section 6(a), V.A.C.S., with which we are concerned, reads as follows:

"Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that *if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons,* or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, *it shall not be necessary to obtain the written consent of the living parent or parents* in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence." (Emphasis added.)

We take note of circumstances under which Texas courts have found insufficient evidence of abandonment and leaving a child to the custody of others to justify a trial court in allowing adoption without the consent of the natural parents in order to contrast them with this case.

In Platt v. Moore, 183 S.W.2d 682 (Tex.Civ.App.—Amarillo 1944, writ ref'd w.o.m.), the father of a minor had a disagreement with his wife and mother-in-law over the wife's insistence on taking their child and living with her mother during an illness. Pursuant to that disagreement and others, the husband, after fruitless attempts to convince his wife to return to live with him, left town and stayed away from wife and child for several years. Upon his return, he was threatened with physical violence by his mother-in-law. After attempting to enlist the sheriff's aid in trying to see his wife and child, the father left town once again and stayed away for some five years until his wife died, whereupon he reclaimed his child. The court upheld his right to custody of the child, finding no

abandonment and failure of support [2] such as constitute grounds for adoption by another without the father's consent.

In Strode v. Silverman, 209 S.W.2d 415 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.) it was held that a destitute mother whose husband had abandoned her did not so abandon and fail to support her child as to make the child subject to adoption without her consent when the destitute mother allowed the child to live with close friends for several years, during which time both the child and mother were sick and the mother could not pay for its necessary health care and during which time the mother kept in constant contact with her child, visiting as often as every three or four weeks and sending money and gifts regularly to the child.

In Ex parte Payne, 301 S.W.2d 194 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.), the court held that where a mother in a divorce action was awarded custody of the minor child, the former husband and father did not "abandon" his child so as to allow the child's stepfather to adopt the child without the natural father's consent upon death of the mother; his failure to visit his child was only after unsuccessful legal action predicated upon his legally designated visitation rights. See also Smith v. Waller, 422 S.W.2d 189 (Tex. Civ.App.—Fort Worth 1967, writ ref'd n.r.e.) and Thomson v. Meaux, 429 S.W.2d 668 (Tex.Civ.App.—Amarillo 1968, no writ).

In contrast to the Platt v. Moore, Strode v. Silverman and Ex parte Payne cases—which involved threats of violence, destitution and illness, and court decrees—relied upon by appellants, the case now before

this Court involves facts from which the trial judge could have inferred a conscious indifference to the child's welfare. An inquiry into a course of conduct showing conscious indifference is relevant in determining whether a parent has voluntarily abandoned a child, Lout v. Whitehead, 415 S.W.2d 403 (Tex.Sup.1967), and an inquiry into the facts of this case discloses the following:

Three children, a son and two daughters, were born to appellants Mr. and Mrs. Andrews. The record shows that the son was once placed with a woman in Fort Myers, Florida, for a period of time the length of which is not disclosed. The other daughter not involved in this proceeding has been placed in Sunway Training Center, Fort Myers, Florida. The child has, according to her father, "high strung nerves, and we put her there to get her straightened out."

Gloria, the subject of this suit, was born to Mr. and Mrs. Andrews on April 29, 1957, in Fort Pierce, Florida. When Gloria was approximately five years old in 1962, the father of Mrs. Andrews, Mr. J. B. Davis, (Gloria's grandfather) took Gloria to North Carolina. The testimony of appellants is to the effect that Mr. Davis told Mrs. Andrews, his daughter, that Mr. Andrews said it would be all right with him (Mr. Andrews) if Mr. Davis took Gloria with him to North Carolina. Thereupon, according to appellants' testimony, Mrs. Andrews decided it would be all right for her father to take Gloria with him. All of this occurred, apparently, within the space of a work day. Mr. Andrews testified that "they could not get a hold of me, because I was eighteen miles in the field working

2. It is significant to note that this opinion as well as all others whose facts arose prior to Acts, 52nd Legislature, 1951, p. 388, ch. 249, was before the applicable statute was changed to make abandonment a *separate* ground for adoption from nonsupport; prior to the above statutory amendment to Article 46a, abandonment *and* nonsupport were both necessary and cumulative for a proper adoption without the consent of the natural parents. Note

that Johnston v. Chapman, 279 S.W.2d 597 (Tex.Civ.App.—Amarillo 1955, no writ) arose under the old statute since the adoption decree was rendered in 1949. In this case, the Court correctly held both requirements, abandonment to custody of others and nonsupport, must be satisfied. The court noted that the jury found the parent had not failed to support the child in setting aside the adoption.

* * * so that night when I came home, my little girl was gone. * * *" There is no testimony regarding Mrs. Andrews' understanding as to the length of the visit (one week, one year, or more) to which Mr. Andrews purportedly consented. All of this happened even though the testimony of both Mr. and Mrs. Andrews was that Mr. and Mrs. Davis told them earlier "that one of these days, they were going to get Gloria because they wanted her."

The above testimony conflicts with other testimony by the Andrews to the effect that Gloria was taken from them by Florida court order. Mr. Andrews explained that he could not be in court on the day for which he was subpoenaed in that case (no explanation was given)—"so the day they wanted my wife and I there, I couldn't be there, so I went up and talked to Florida Judge J. M. Sample, my wife and I did, and I asked him what this was all about. And he said, 'Well, I don't have to tell you anything.' That is the way Judge Sample told us." Mr. Andrews testified that Gloria was taken from him and his wife because of alleged mistreatment of the child, because in-laws said that Mr. and Mrs. Andrews beat her and put her in a closet. There is also testimony that Mr. and Mrs. Andrews discovered, some five months after Gloria was taken from their home, that Gloria was living at Girl's Town in Whiteface. During the more than seven years that have elapsed between that discovery and August of 1970 when they received non-resident notice of this action in Texas for adoption, Mr. and Mrs. Andrews never instituted any legal action to regain custody of Gloria; they never visited her or contributed to her support; they never contacted her.

There is testimony by Mr. and Mrs. Andrews that a judge in Florida "told them a different story every time" when they asked him when their daughter was going to come home—but it is also admitted that they did not bring any legal action anywhere. There is testimony by Mr. and Mrs. Andrews that they wrote letters to Gloria in Girl's Town and tried to call her and that they were refused any contact with her—but it is undisputed that they never came to Texas until receiving notice of this adoption proceeding. There is testimony by Mr. and Mrs. Andrews that they wanted to send Gloria clothes and money —but Mr. Andrews explained as follows why he did not make any substantial contribution to her support:

"Q. Mr. Andrews, did you or your wife make any substantial contribution to her?

"A. I am going to tell you why we didn't. My wife's estate, that money Mr. Davis was sending Gloria at Whiteface, Texas, and it was to come out of my wife's trust fund."

Mr. Davis, Gloria's grandfather, left a trust fund when he died sometime between 1962 and 1970, which, from the Andrews' testimony, was to see to it that Gloria received $100 per month and Mrs. Andrews $300 per month. Apparently, this was one reason Mr. Andrews did not feel it incumbent upon him and his wife to support the child thereafter. Mr. Andrews also testified that he himself did not contribute anything toward Gloria's support because Girl's Town "wouldn't let us even get in contact with her." But there is no evidence that Mr. and Mrs. Andrews tried to come to Texas to see her during the seven years she resided at Girl's Town.

In August of 1968, Gloria was placed in the home of Mr. and Mrs. Dupy, appellees here. It was Mr. Andrews' testimony that up until that time—1962 through 1968—he had communicated with an official at Girl's Town. Yet there is no showing of any attempt to come to Texas to see Gloria, nor any legal action instituted when the child was transferred to the home of Mr. and Mrs. Dupy.

We have reviewed the record very carefully and studied all of the testimony of all witnesses at the hearing, the testimony of Mr. and Mrs. Andrews particularly, with great care. From a review of all the testi-

mony adduced at the hearing, we are unable to conclude that the trial judge's finding, to wit, that Mr. and Mrs. Andrews voluntarily abandoned and deserted Gloria for a period of more than two years and left her to the care, custody, control and management of other persons, is not supported by sufficient evidence. The record reflects that Mr. and Mrs. Andrews permitted their daughter to live in Texas at Girl's Town for some six years without a visit or attempted visit—the only explanation given being that officials at Girl's Town "would not let us contact her." There is no intimation that the Andrews were under any legal restraint in failing to travel to Texas to investigate the circumstances surrounding their daughter's residence in Texas. There is no justification given for why Mr. or Mrs. Andrews "could not be there" on the day a court hearing, apparently regarding Gloria's custody, was scheduled in Florida in 1962. There is no evidence that Mrs. Andrews was employed—there is evidence that she was ill at one time, but there is no evidence that this fact was made known to the judge presiding at the hearing, or that this was the reason why she "could not be there." There is evidence that after the child was removed from the home of Mr. and Mrs. Andrews to Girl's Town in Texas and after she was placed in the home of Mr. and Mrs. Dupy in August of 1968, that Mr. Andrews asked an official at Girl's Town where she had been moved—but there is also evidence that his failure to receive a satisfactory answer from the official resulted in a termination of his search. There is evidence that when the Andrews received notice of this adoption proceeding that they contacted attorneys in Texas without success in hiring one during the three months which elapsed between the notice and the date of hearing—but there is room for an inference that their search was confined to a small number of attorneys, as all of the attorneys they contacted "did not handle those kind of cases." In short, there was sufficient evidence for the trial judge's finding that the Andrews abandoned custo-

dy of their child to the care of either the Florida welfare authorities or the child's grandfather and subsequently to Girl's Town in Whiteface, Texas, for more than two years and subsequently to Mr. and Mrs. Dupy for more than two years.

And finally, there is sufficient uncertainty and contradiction in the testimony of the Andrews to have caused the trier of the facts to question their credibility and further to question the diligence of their search for their daughter to which they testified. Southland Life Insurance Co. v. Aetna Casualty and Surety Co., 366 S.W. 2d 245 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n.r.e.).

In reviewing all the evidence we find it sufficient to sustain the trial court's finding of abandonment. In considering only that evidence favorable to the finding, we find it of probative force and overrule appellants' no evidence point.

The judgment of the trial court is affirmed.

REYNOLDS, J., not sitting.