Robert Eugene ELLIOTT, Appellant,

v.

Thurman David MADDOX, Appellee.

No. 17498.

Court of Civil Appeals of Texas,
Fort Worth.

April 26, 1974.

Rehearing Denied June 7, 1974.

Donald L. Kraemer, Staff Counsel for Inmates, Huntsville, for appellant.

Loe & Warren, and Mark J. Rosenfield, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Maddox, as plaintiff, sought and obtained judgment of adoption of the person of a minor child of defendant Elliott over his protest and he has appealed.

Reversed; adoption vacated.

At the outset we take note that Elliott is in the Texas penitentiary as a consequence of a conviction from a felony. His attorney was one provided by an agency of the State by reason of his indigent status as a convict, in order to secure the civil right which he has asserted, viz: to preserve the status of "parent and child" heretofore existent between himself and the child who was sought to be adopted.

In view of the evidence placed in the record we find ourselves in agreement with the finding of the trial court that it would be to the best interests of the child that his adoption be permitted. However, as will be demonstrated in our opinion, the best interest of the child may not be deemed controlling in this instance and the trial court was without authority to decree the adoption under circumstances presently existent.

By Hutson v. Haggard, 475 S.W.2d 330 (Beaumont Civ.App., 1971, no writ history), following cited precedent from the State of Arizona, an adoption was upheld. There the decree was grounded in the court's conclusion that since the natural father's voluntary criminal actions had brought about his conviction and incarceration for over two years in the penitentiary —without hint that anyone other than himself was in any degree responsible for his inability to visit his child or contribute to its support for the two year period—there might be implied the existence of a conscious disregard and indifference by him to his child, in respect to parental obligations, sufficient to justify the finding of abandonment.

In Hutson v. Haggard the criminal offense which resulted in conviction and incarceration occurred subsequent to the birth of the minor child sought to be adopted; in the case before us the criminal offense committed by Elliott was prior to the birth of his child, though by only two months' time.

Arizona cases are not necessarily grounded upon any finding of abandonment. The applicable Arizona Statute is Sec. 8–106, "Consent to adoption; who shall consent; waiver". Therein is provision that adoption shall not be granted without consent, with the exception: "C. . . . the court may waive the requirement of the consent of any person required to give consent when after a hearing on actual notice to all persons adversely affected the court determines that the interests of the child will be promoted thereby. . . ." In Kelley Minors (Petition for Kelley Minors) 6 Ariz.App. 299, 432 P.2d 158, 161 (1967, rev. den.), a case which the Beaumont Court of Civil Appeals specifically noticed in preparation of the Hutson v. Haggard opinion, attention is called to the fact that in Arizona adoption cases the welfare of the child is the primary consideration.

Decision is to be made by Vernon's Ann. Texas St. Art. 46a, "Proceedings for adoption, hearing and rights of adopted child", Sec. 6, "Consent of parents and child; exceptions", in effect at time of trial. Under 6(a) of the section is provided: "Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons . . . it shall not be necessary to obtain the written consent . . . and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile

Court of the county of such child's residence; . . . ."

■ Thus is evidenced that where the adoption of a child is sought on the ground of its abandonment the adoption may only be permitted, absent consent of the living parents, when the evidence shows (1) the abandonment of such child by the non-consenting parent, and, *if that be shown* (2) a duration of the period of such abandonment for the length in time of two years, and, *if such duration also be shown* (3) that the adoption sought would, if granted, be in the best interests of the child. Applicable to the determination a strict construction of the Texas Adoption statutes apply in favor of the non-consenting parent. Heard v. Bauman, 443 S.W.2d 715, 719 (Tex.Sup., 1969).

■ The term "voluntarily abandon", as used in Art. 46a, means a wilful act or course of conduct such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to the child. Strode v. Silverman, 209 S.W.2d 415, 419 (Waco Civ.App., 1948, writ ref., n. r. e.). On the meaning of the term the Supreme Court quoted Strode v. Silverman in its opinion in Hendricks v. Curry, 401 S.W.2d 796, 801 (Tex.Sup., 1966).

■ In Smith v. Waller, 422 S.W.2d 189, 192 (Fort Worth Civ.App., 1967, writ ref., n. r. e.), we had occasion to review authorities including those of other states cited in 35 A.L.R.2d 662, Annotation: "What constitutes abandonment of desertion of child by its parent or parents within purview of adoption laws", and indicated our accord with the statement (at p. 664) that "The overwhelming weight of authority is that an abandonment of desertion within the purview of the adoption law must be absolute, complete, and intentional." Smith v. Waller was like unto that before us since in both cases the non-consenting parent was one who did not

have legal custody. In both cases the custody had been given to the other parent pursuant to a divorce. To establish an abandonment by one who had not the duties of a child's "custodian" different proof would be required from that which would be necessary to show abandonment by the parent designated as the child's "custodian" by a decree of court.

■ Here the trial court has specifically found, in behalf of the non-consenting parent, that he was not derelict in respect to the duty of support to the extent of his ability for any two year period. Therefore we are bound to disregard any want of financial support. We hold that, by evidence, there is not a period for the two years required by our statute which could be deemed to have begun as an abandonment. Of course there was not, nor could have been, the same attention given the child by Elliott as ordinarily to be expected of one *in loco parentis* who had been relieved (or deprived) of the duties of custodian to his child. The duty of such a parent so relieved would, despite the decree, oblige him to maintain a readiness to re-assume custodial duties in the event that became the need of the child. Elliott was helpless in this maintenance of readiness from the time he entered the penitentiary. The entry into the penitentiary was undisputedly shown to have been involuntary. He was fugitive after his felony conviction was affirmed and his incarceration was delayed by reason of his flight. By arrangement with the child's mother (custodian) he had visitation with the child during this period of time.

■ Since the criminal offense for which Elliott was convicted and incarcerated occured prior to the birth of the child such, even if it were possible that commission of the offense be deemed a voluntary act of abandonment of some person, assuredly could not have been an act of abandonment of anyone then not yet born.

We have reviewed all the evidence. By the requisites of the provision of the adoption statute that there must have been "voluntary abandonment" of the child sought to be adopted. Within the meaning attributed to the term "voluntary abandonment" in Strode v. Silverman, supra (apparently approved by the Supreme Court in Hendricks v. Curry, supra), there is not in this case any evidence raising the issue. That there was no evidence thereof is, in substance, the sole point of error presented on appeal.

Had a period of "voluntary abandonment" been shown to have begun at any time prior to the time Elliott entered the penitentiary perhaps it might properly be deemed to have persisted, at and after such time, so that while he was incarcerated the requisite continuous period of two years' abandonment might be said to have become accumulated. 23 Tex.Jur.2d 117, "Evience", Sec. 76 "(Continuation of Established Status or Condition)—In general."

That legal principle seems to have been the basis of the holding of the Houston Court of Civil Appeals, 14th District, in the case of James Henry Jordan v. Sherry Neil Hancock, not yet reported, opinion filed April 10, 1974. Since in the instant case our holding is that abandonment was not raised as a fact issue whereby it might have been considered in respect of any question of abandonment duration we do not reach the question.

Were we to find both the existence of abandonment, within contemplation of the Texas adoption law, and a period for its duration amounting to the two years provided thereby, we would reach the question of the best interest of the child sought to be adopted. It was upon a conclusion that such would be to that interest of the child that the trial court must have decreed the adoption. We hold that the question was not reached there nor here.

Judgment is reversed; the adoption decree is vacated.