**Arthur Carson RUBEY, III, et ux., Appellants,**

**v.**

**David Lee KUEHN, Appellee.**

**No. 15458.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 10, 1969.

Rehearing Denied May 1, 1969.

Wandel & Bousquet, Thomas G. Bousquet, Houston, for appellants.

Gaines & Merrill, Charles P. Merrill, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a judgment refusing to allow Arthur Carson Rubey, III, whom we will hereafter refer to as appellant, to adopt Michael Lee Kuehn, the issue of the marriage of appellee and Mrs. Rubey. Mrs. Rubey gave her consent to the adoption but appellee refused to give his consent. Appellant, the stepfather, petitioned the court to allow the adoption. In the petition appellant asked the judge of the court to give his permission to appellant to adopt the boy, alleging that appellee had failed to contribute any money at all to the child's support since May 1, 1960, and he thus failed to furnish support commensurate with his financial ability to do so. The trial court in its judgment recited the failure of the father to give his consent and stated the court denied appellant's motion that the judge give his consent. Then there was the adjudication that the relief sought by appellant be denied.

Appellee in his contest denied failure to support. He asserted offers of support, though the divorce decree dissolving his marriage to the boy's mother provided no support was being adjudged against him, and stated his offer of support had been rejected by the boy's mother. He professed his willingness and ability to support his son. He denied abandonment or desertion of his son.

In April, 1960, the mother of the boy filed suit for divorce against appellee. In her petition she alleged she was financially able to support herself and the child and also that her parents, who were persons of substantial means, had assured her they would aid and assist her in every way in educating the child in a proper manner. She alleged that appellee was unable to make adequate provision for the care, maintenance and support of the child. In what is denominated a "Supplemental Petition" the mother asked for an injunction against appellee forbidding him from having any contact with her or the child. In August, 1960, the mother obtained a divorce. The judgment gave custody of the child to the mother with specified visitation times being given appellee. It recited that inasmuch as the mother was able to support the child and no contribution to such support by defendant was required because he was unable to pay such support, no support by appellee was ordered. Appellee was permanently enjoined from having any contact or communication with the mother or the members of her immediate family except to the extent necessary to the exercise of visitation rights.

On February 27, 1961, appellee filed a motion to modify the original divorce decree so as to increase his visitation privileges and also asking the court to fix an amount for him to pay as child support. In this motion appellee stated he was employed at a monthly salary of $375.00 and was able and willing to contribute a rea-

sonable amount toward the support of his child.

In a sworn reply the mother, by way of answer and motion for citation for contempt of court because of alleged violations by appellee of the injunction, stated, among other things, that she denied appellee had tendered any support since the divorce except "$1.00 cash sent to the child and possibly a $25.00 check payable to plaintiff which was returned to defendant." The mother then stated "that the child has the best of care; that plaintiff's parents are financially able to support the child and are willing to do so * * *"

On April 7, 1961, the court entered a temporary order and changed the times of visitation. The order stated that the other matters set up in appellee's motion, the court felt, might be worked out without necessity of a hearing. No further court proceedings seem to have been had.

The oral testimony at the adoption hearing reflects that the mother married appellant in September, 1961. They have one child. Since the marriage Michael has lived with his mother and appellant and their child. The substance of Mrs. Rubey's testimony was that appellee had never contributed or offered to contribute to the support of his son since the divorce. She stated appellee had not seen the child for four years immediately preceding the filing of appellant's petition for adoption. In this latter connection she said appellee called and stated he and the boy were not getting along too well and he thought it best that she not send "Mike" over any more. She had never refused any offer of support. If it had been offered she would have accepted it. She admitted that in her divorce petition she had stated she and her parents were financially able to support Mike and no assistance from appellee was required. She had never requested support. The child had never received any presents from appellee in the past four years.

Mr. Rubey, with whom Mike has been living since September, 1961, testified that so far as he knew appellee had made no effort to support Mike, nor had appellee seen Mike in the past four years.

Appellee testified that approximately four years before the adoption proceeding he called Mrs. Rubey. He told her he thought it best if he didn't see Mike any more. He admitted he had, during the past four years, been financially able to support Mike. He ceased his visitations because Mike "had become irritable with him." He felt Mike "was being disturbed by conversations that he had had with some people." Mike began referring to him as a bad man. He wanted to support his son and finally petitioned the court to fix support because he was never able to talk to Mrs. Rubey "or anyone else connected in that direction." Appellee, some time after his divorce from Mrs. Rubey, remarried. To his second marriage, which also ended through divorce, one child was born. He is paying $70.00 per month as support for that child. He testified he was now able and willing and wanted to pay support for Mike. If he had been asked to support Mike at any time he would have done so. He bought presents from time to time for him. In connection with this adoption proceeding is the first time anyone has brought to his attention anything "toward support of Michael." He quit seeing Mike because of "mental anguish". On one occasion he had a refund check from overpayment of income tax payable to him and Mrs. Rubey. He got her to endorse it but did not give her half of it because she did not ask him for it. He was led to believe she didn't need the money. He testified he loved his son and was asking the court to deny the adoption. He also testified that appellant, Mr. Rubey, had been a good father to Mike.

Mrs. Kuehn, the former wife of appellee, testified that while she was married she would go by to pick Mike up to take him to visit his father. The relationship between them was one of love. On occasions the son would cry hysterically when he had to leave. Appellee bought a present nearly every week for Mike. She got along fine

with Mike. She loved him. Appellee was regularly paying the support for their son. Later during Mike's visit he became resentful toward her and called her a stepmother and said stepmothers were witches and were evil.

The trial court filed findings of fact and conclusions of law. We will notice the substance of such of them as we deem material to the disposition of this appeal.

### Findings of Fact

II. The father, David Lee Kuehn, in the divorce decree was not ordered by the court to make any payments to the mother for the support of the child. The father was granted visitation privileges.

IV. In her petition for divorce against Mr. Kuehn Mrs. Rubey stated that she and her parents were financially able to support the child and did not require the assistance of Mr. Kuehn.

V. Later when Mr. Kuehn petitioned the court to determine the amount of child support, Mrs. Rubey in her answer stated she did not desire child support payments from Mr. Kuehn. The court did not require Mr. Kuehn to make child support payments.

VI. Mr. Kuehn, after the divorce, sent Mrs. Rubey one check for $25.00 toward the support of the child. The check was returned to Mr. Kuehn. He also has bought presents for the child.

VII. Mrs. Rubey has never requested child support payments.

VIII. Mr. Kuehn has not given his consent for adoption.

### Conclusions of Law

1. Mr. Kuehn did not voluntarily abandon and desert said child, nor did he fail to contribute substantially to the support of such child during a period of two years commensurate with his financial ability within the meaning of the law.

2. It would not be in the best interest of the child for the court to give its consent to the adoption.

3. It would not be in the best interest of the child to permit this adoption.

Appellant assigns three points of error:

1. "The court erred in failing to find that the failure of the natural father to support the minor child for a period of time in excess of two years justified the Juvenile Court to grant consent to the adoption of the minor child."

2. The Juvenile Court erred in failing to grant its consent to appellant to adopt the minor child.

3. The Juvenile Court erred in failing to grant the adoption as prayed for by appellants in their petition for adoption.

Where there is a living parent, the parent must give his consent to the adoption. Article 46a, Section 6, Vernon's Ann.Tex.St. However, where such a parent refuses to give his consent, if as is alleged in this case such parent has not for two years contributed to the support of the minor commensurate with his financial ability to do so, said Section 6 provides an "adoption shall *be permitted* (emphasis ours) on the written consent of the Judge of the Juvenile Court * * *."

The contention of appellant apparently is that if it is established that there was such a failure to support, the judge has no discretion but must give his consent. Too, he argues, though there is no point attacking the court's finding to the contrary, that here the evidence established such failure to support.

■ We are of the view that the Juvenile Judge has the right to exercise discretion in determining whether he should give consent to the adoption. If this were not so, then there would be no need in the statute for the requirement of his consent. The statute could just dispense with the requirement of consent where the non-con-

senting parent has failed to support the child. Too, it is the Juvenile Judge who must give the consent and not the judge before whom the adoption proceeding is pending. In some cases, of course, as in this one, the proceeding may be in the Juvenile Court, in which case the judge to give consent and to determine whether to grant the adoption would be the same. This, too, indicates to us that it was intended the Juvenile Judge should have some discretion otherwise it could have been provided that the judge before whom the adoption proceeding was pending could give the consent.

■ In the exercise of this discretion the Juvenile Judge should consider the natural rights of the non-consenting parent and what is for the best interest and welfare of the child. In this case the court could consider the facts we have rather fully stated above. They authorize the conclusion that the absence of support was occasioned by the refusal of the mother to accept it. While the mother in her testimony denied any tendered support and professed willingness to accept it, there was, as shown above, contradictory testimony. Too, the evidence showed the child in no need but that he was being well taken care of.

With regard to the appellee's not having seen the child for the past 3½ or four years, the testimony above stated and other testimony in the record would support the conclusion that due to the strained relationship between Mrs. Rubey and appellee the child had reached the age that he sensed something wrong and it was affecting him emotionally. The appellee thought that the child's welfare, for the time, would best be served by his not seeing him. Yet there is testimony that until shortly before the cessation of visits there was evident harmony and love between father and son. The father in his testimony professed continued love for the child. The court could well conclude, in the light of human experience, that as the child got older there would be a good chance that the relation-

ship of father and son could be resumed harmoniously. The court heard and saw the witnesses testify. He is in a better position than are we to judge their credibility and the weight to be given their testimony.

■ Clearly, whether an adoption should be granted is within the discretion of the trial court. This discretion is subject to review for abuse. We may not, however, substitute our judgment for that of the trial court just because we might have reached different conclusions.

■ In the exercise of this discretion the trial court should keep in mind the natural rights of the father and the best interests and welfare of the child. Under the record we cannot say the court erred in denying the adoption.

Affirmed.