**Franklin DeWayne HUTSON, Appellant,**

v.

**Bill C. HAGGARD et ux., Appellees.**

**No. 7309.**

Court of Civil Appeals of Texas,
Beaumont.

Dec. 30, 1971.

Maxine T. McConnell & Walter W. Steele, Jr. Legal Clinic, SMU School of Law, Dallas, for appellant.

Coleman & O'Brien, O. Shelton Coleman, Garland, for appellees.

KEITH, Justice.

The natural father appeals from the judgment of the Juvenile Court of Dallas County granting a petition for the adoption of his child without his consent. Appellant and Judith Lynn Haggard (now the wife of Bill C. Haggard, petitioner in the court below and appellee here) were married in June 1966, and the minor child involved in this proceeding, Melissa Ann Hutson, was born in August of 1967. Appellant and the child's mother were divorced in June 1968, and the mother was awarded the custody of Melissa and appellant was ordered to pay ten dollars per week for her support. There was no provision in the divorce decree permitting appellant visitation privileges. Mrs. Haggard testified: "I have never received a penny from him" (appellant) or his relatives since Melissa Ann was one month old. She was four and a half years of age at the time of the hearing.

It developed upon the trial of the cause that appellant was an inmate of the Ohio State Penitentiary where he was serving a sentence for armed robbery. We paraphrase appellant's answers contained in his deposition: He is presently serving a sentence of ten to twenty-five years im-

posed on December 17, 1969, and said, "I will be eligible for a review of sentence December 1974." His prior incarcerations are admitted, but it is difficult to determine precisely where and when he was imprisoned so we reproduce his answers given in answer to separate interrogatories. In answer to a question as to his having been incarcerated prior to his Ohio conviction, appellant said:

"I was incarcerated in Milan, Michigan, Correctional Inst. on or about September 1966, then transferred to Segoville, Texas, parole in June 1967. I was violated [sic] in August of 1967, went to Sandstone, Minn. then transferred to Segoville, they released me in October 1968. I was then arrested in East St. Louis, March 1969, then to present commitment."

In answer to another interrogatory, he gave this chronology of his imprisonment:

"March of 1966 through June 1966, South Bend, Indiana, July 1966 to Milan, Michigan, then to Segoville until June 1967; In October 1967 to Segoville and released in October 1968. I was arrested again in March 1969, then again July 1969, present incarceration in O. P."

Being asked to list all the places of employment, other than in the prisons mentioned, appellant listed only one and his period of employment was stated to have been "July 1968 through January 1969. Wages 1.75 per hour. ($75.00 per week)" We note that he said he was in the Segoville institution until October, 1968.

He was working as a barber in the Ohio prison and had earned $130.00 while there, being paid at the rate of eight cents per hour. He had a total of $55.00 in the "prison accounts" in Ohio. He testified that during his private employment while outside prison walls he had contributed $560.00 for Melissa's support, having sent the money to the child's mother. She denied having received any money from appellant and he produced no receipts or cor-

roboration of his statement. Mrs. Haggard said that while appellant was in Segoville she "took Melissa out there hoping that when he got out, he would change, but it didn't do any good." Upon his release on parole from Segoville, the parties lived together for three days. Mrs. Haggard did not leave any forwarding addresses following this abortive reconciliation.

Bill C. Haggard, a graduate of Midwestern University at Wichita Falls, is employed as a school teacher in the Richardson Independent School District. He married Judith Hutson Haggard on June 6, 1968, and Melissa has lived in their home constantly since that date. The Haggards have a nineteen month old child of their own. Appellee testified as to his love and affection for Melissa and Mrs. Haggard said that Melissa called him "daddy."

The trial court's findings of fact and conclusions of law were all favorable to appellee. The court concluded that:

"3. The written consent of the nautral father of said child to be adopted is not necessary in that the natural father voluntarily abandoned said child for a period in excess of two years during which time he has been imprisoned *and such imprisonment constitutes abandonment such as is contemplated by the adoption statutes*; [emphasis supplied]

1. Appellant has been ably represented by the Director, Legal Clinic, Southern Methodist University School of Law, and Alan Haywood, a student participating in the Clinic's activities. We commend Director McConnell and Mr. Haywood upon the quality of the research going into the brief, the scholarly approach to a novel problem, and their assistance to the court. Appellee's counsel has likewise filed an excellent brief.

2. "Sec. 6. (a) Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, *for*

"4. The written consent of the natural father of said child to be adopted is not necessary in that the natural father failed to contribute substantially to the support of said child commensurate with his financial ability for a period in excess of two years."

We have made this elaborate statement of the facts in order to meet the contentions advanced by diligent counsel representing appellant.[1] The principal contention advanced by appellant is that the trial court erred in holding that imprisonment for more than two years constitutes such abandonment as is contemplated by the adoption laws. A subsidiary contention is that although appellant may not have contributed very much financially, yet "the record show[s] that Appellant contributed to the support of said child commensurate with his ability to do so."

The point urged by appellant requires us to construe Article 46a, § 6, Vernon's Ann.Civ.St.,[2] and we do so under the rule announced in Heard v. Bauman, 443 S.W.2d 715, 719 (Tex.Sup.1969), wherein the court said:

"While adoption statutes are generally given a liberal construction, the rule of strict construction applies in favor of a non-consenting parent. This is especially true in cases in which it is asserted that because of the parent's misconduct

*a period of two (2) years*, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during *such period of two (2) years commensurate with his financial ability*, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence. * * *" [emphasis added]

toward the child, his consent to the adoption is not required."

Another rule governing our review of the cause is that set out in Hendricks v. Curry, 401 S.W.2d 796, 801 (Tex.Sup. 1966):

"Article 46a, the adoption statute, requires parental consent to adoption except in certain circumstances. One of the circumstances in which consent is not required is where 'a living parent or parents shall voluntarily abandon and desert a child.' In that context 'abandonment' was defined in Strode v. Silverman, Tex.Civ.App., 209 S.W.2d 415, 419 (1948), writ refused, n. r. e., in this language:

'Voluntary abandonment, as used in the adoption statute, * * * is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child.'

"See also Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405, 408 (1956), writ refused, n. r. e. The definition is a sound one and should also be followed in determining whether a child is an 'abandoned' child within the meaning of Article 2330."

Appellant contends that he has not "abandoned" Melissa in the sense of the statute, citing to us out-of-state cases which indicate that under the laws of the particular state, "incarceration of the parent, does not constitute intentional abandonment." E. g., In re Staat (Hennepin County Welfare Board v. Staat), 287 Minn. 501, 178 N.W.2d 709, 713 (1970), where the cases are reviewed. See also, Annotation, 35 A.L.R.2d 662, 693, "Involuntary separation; imprisonment."

On the other hand, appellee cites us cases from other jurisdictions which reach a contrary conclusion. E. g., in Petition for Kelley Minors, 6 Ariz.App. 299, 432 P.2d 158, 161 (1967, rev. den.), where the court construed a statute having remarkable similarity to the Texas statute under consideration. The father had been imprisoned before the mother procured her divorce. She had remarried and the stepfather sought to adopt the children of the former marriage of the mother. There, as here, the paramount question before the court was the best interest of the children. Under these circumstances, closely parallel to ours, the court, speaking through Chief Judge Cameron now a member of the Arizona Supreme Court, held that the adoption was properly ordered.

The parties have cited many other cases from various jurisdictions of the country, but the foregoing is sufficient to show the conflict in authority. Since this is a question of first impression in Texas on the precise point, we choose the line of decisions exemplified by *Kelley Minors*, supra. It was appellant's voluntary acts which brought about his confinement in the penitentiary. There is no hint in our record that anyone other than appellant was in any degree responsible for appellant's inability to visit with his child or to contribute to her support. Only his course of criminal conduct has prevented his exercising parental authority or making any parental contribution to the child since she was nine months old. He will not even be eligible for a review of his sentence for another three years.

Paraphrasing the language of our Supreme Court in *Hendricks*, supra, we are of the opinion that appellant's wilful criminal acts and course of conduct has been such as implies a conscious disregard and indifference to Melissa in respect to his parental obligations that he as a parent owed to her. Thus, we reject the contention that imprisonment does not constitute voluntary abandonment under *Staat*, supra.

In considering the natural rights of the non-consenting parent, the trial court is required to consider the entire record and to exercise its broad discretion in

determining what is for the best interest and welfare of the child. Rubey v. Kuehn, 440 S.W.2d 95, 99 (Tex.Civ.App., Houston, 1st Dist., 1969, error ref.); Drieth v. Lightfoot, 446 S.W.2d 390, 392 (Tex.Civ. App., Waco, 1969, error ref. n. r. e.). And, as was said by Chief Justice Bell in *Rubey*, supra:

"Clearly, whether an adoption should be granted is within the discretion of the trial court. This discretion is subject to review for abuse.

\* \* \* \* \* \*

"In the exercise of this discretion the trial court should keep in mind the natural rights of the father and the best interests and welfare of the child."

We find no abuse of discretion in this cause. Appellant's points are each overruled and the judgment of the trial court is in all things affirmed.