**James Henry JORDAN, Appellant,**

v.

**Sherry Neil HANCOCK, Appellee.**

No. 951.

Court of Civil Appeals of Texas, Houston (14th Dist.)..

April 10, 1974.

Rehearing Denied May 1, 1974.

Harry H. Walsh, James H. Randals, Huntsville, for appellant.

C. B. Stanley, Houston, for appellee.

TUNKS, Chief Justice.

This is an adoption proceeding, in which the natural father of the children in question refused to consent to the adoption.

Sherry Neil Hancock, the appellee, married Aretta Marlene Hancock in 1959. Before their divorce in 1967, this couple had three children, none of whom are involved in the present controversy. In 1968 Mrs. Hancock married James Henry Jordan, the appellant. While married to Mr. Jordan, Mrs. Hancock gave birth to the two children in question. In July of 1969 this couple separated and they were divorced on June 3, 1970. In July of 1970 Mrs. Hancock remarried her present husband, Mr. Hancock. Mr. Hancock petitioned to adopt the two children on May 4, 1973, and on June 29, 1973, the adoption was granted, and the last name of the two children, a girl and a boy, was changed to Hancock. Mrs. Hancock and the trial judge consented to the adoption, but Mr. Jordan, the natural father, refused to consent. Mr. Jordan has appealed.

Vernon's Tex.Rev.Civ.Stat.Ann. art. 46a, sec. 6(a) (1969) (repealed as of January 1, 1974) provided that adoption is proper only if the written consent of the living parents is obtained. However, it was provided that the written consent would not be required if:

> a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability.
> . . .

No findings of fact or conclusions of law were requested or filed. Therefore, the trial court's judgment should be sustained "if it can be upheld on

any legal theory that finds support in the evidence." Bishop v. Bishop, 359 S.W.2d 869, 871 (Tex.Sup.1962). Furthermore, it must be presumed that every fact issue was found favorably to the appellee. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (1957). The rule of Heard v. Bauman, 443 S.W.2d 715 (Tex.Sup.1969), that Article 46a is to be strictly construed in favor of the non-consenting parent, does not alter the above appellate principles. The burden of proof is still on the petitioner for adoption to demonstrate why the non-consenting parent's consent is not required. In re Armstrong's Adoption, 394 S.W.2d 552 (Tex.Civ.App.—El Paso 1965, no writ). However, the quantum of proof required is not increased. All that is meant by the rule of Heard v. Bauman is that the exact terms of the statute must be established by a preponderance of the evidence. It should be noted that although the primary consideration is the natural right of a parent, Heard v. Bauman, *supra,* another consideration in the discretion of the trial court is the best interest of the children. Rubey v. Kuehn, 440 S.W.2d 95 (Tex.Civ. App.—Houston [1st Dist.] 1969, writ ref'd).

If the evidence will support the conclusion that Mr. Jordan either abandoned the children or failed to support them commensurate with his financial ability, then the adoption was proper. In early July of 1969 Mr. Jordan, who had just recently been released from a military stockade (apparently for being absent without leave), left his family in Houston and traveled to Tennessee. On July 22, 1969, he was arrested in Tennessee, and on October 31, 1969, he was sentenced to prison. While he was in prison in Tennessee his wife sued for divorce. When the divorce was granted, on June 3, 1970, Mrs. Hancock was given custody of the two children. The divorce decree also recited that, "The Court further finds that the Respondent is in the Penitentiary, and therefore makes no findings as to child support or visitation."

When Mr. Jordan left Houston, the older child was less than a year old, and Mrs. Hancock was three months pregnant with the younger. Mrs. Hancock claims Mr. Jordan was aware of her pregnancy when he left, but he claims the contrary. In September of 1970 Mr. Jordan was released from the Tennessee prison and returned to Houston. He held several jobs until he was again arrested in April of 1971 and placed in the Harris County Rehabilitation Center. He eventually received a four-year prison sentence, which he was still serving at the time of the trial. It is undisputed that at no time after July of 1969 did Mr. Jordan contribute anything to the support of the children.

■ Because Article 46a must be strictly construed, it was encumbent upon the petitioner to prove that at no time during a two-year period did Mr. Jordan contribute to the children's support in accordance with his financial ability. The record reflects that while he was in prison in Tennessee he received $70 per month. The various jobs he held in Houston, during the seven-month period he was free, paid $300 per month, $3.00 per hour, and $2.25 per hour. Of these seven months he was employed for only four. After being jailed in April of 1971 he received no income. The petitioner has failed to establish that for a continuous two-year period Mr. Jordan failed to support the children commensurate with his financial ability, when it is clear that during certain portions of any possible two-year period he had no income at all.

When Mr. Jordan left Houston in the family car in July of 1969, he left his family with three weeks overdue rent, no food in the house, and no milk for the baby. Mrs. Hancock did not hear from him until right before their divorce, which was over a year later. During his seven-month period of freedom he made no attempt to locate his ex-wife or the children. Neither did he attempt to obtain a judicial order of visitation rights. He was informed be-

fore the divorce of the birth of his second child.

In Hendricks v. Curry, 401 S.W.2d 796, 801 (Tex.Sup.1966), statutory abandonment was defined as

a wilful act or course of conduct, . . . such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child [citing Strode v. Silverman, 209 S.W.2d 415, 419 (Tex.Civ.App.—Waco 1948, writ ref'd n. r. e.)].

■ Mr. Jordan contends that because he was involuntarily imprisoned he cannot be deemed to have abandoned his children. In Hutson v. Haggard, 475 S.W.2d 330 (Tex.Civ.App.—Beaumont 1971, no writ), it was held that the "course of criminal conduct" which resulted in imprisonment for an entire two-year period constituted intentional abandonment. A different approach to this question is that taken by the Minnesota Supreme Court, which said, in Staat v. Hennepin County Welfare Board, 287 Minn. 501, 178 N.W.2d 709, 712–713 (1970):

[I]mprisonment per se is not sufficient to constitute abandonment.

. . . a separation of child and parent due to misfortune and misconduct alone, such as incarceration of the parent, does not constitute intentional abandonment.

In fact, it is conceivable that one's involvement in crime might reflect his misdirected concern for the welfare of his children, rather than his disregard for it. However, in Staat the Court concluded that the non-consenting parent was chargeable with abandonment because of other evidence which indicated such an intent. The fact of imprisonment should not constitute abandonment as a matter of law. Neither should it preclude a finding of abandonment. In the present case the other evidence that Mr. Jordan intended to abandon his children was sufficient to support a conclusion of law to that effect.

■ Mr. Jordan also contends that because his wife was granted custody, he cannot be held to have abandoned the children. There is a line of Texas cases which supports this position. E. g., Smith v. Waller, 422 S.W.2d 189 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.); Trotter v. Pollan, 311 S.W.2d 723 (Tex.Civ. App.—Dallas 1958, writ ref'd n.r.e., 158 Tex. 494, 313 S.W.2d 603). These cases, though, are all based upon a case involving criminal desertion. See Freeman v. State, 103 Tex.Cr.R. 428, 280 S.W. 1069 (Tex. Cr.App.1926). It would seem that the standards utilized in the determination of what constitutes the crime of desertion would not necessarily be the same as those standards used to determine civil abandonment. It would be onerous indeed if one were chargeable with criminal desertion of his children after custody had been judicially awarded to another. There are also many Texas cases in which a non-consenting parent was found to have abandoned children which had been awarded to the other party in a divorce case. E. g., Hutson v. Haggard, supra; Rubey v. Kuehn, supra; Hammond v. Eplen, 216 S.W.2d 258 (Tex.Civ.App.—Galveston 1948, no writ). However, none of these cases expressly deals with the question of whether a parent without custodial rights may be found to have abandoned his children. It seems, though, that the normal situation when an adoption without consent would occur is when a new spouse of the custodial parent seeks to adopt his stepchildren. If a finding of abandonment were precluded in such a situation, then the petitioner would be relegated to proving failure to support. We therefore hold that the trial court properly concluded that Mr. Jordan abandoned his children for a period of two years. The adoption was therefore not invalid for want of consent of the natural parent.

Affirmed.