**Kay SMALLWOOD et vir, Appellants,**

**v.**

**Max J. SWARNER et ux., Appellees.**

**No. 18329.**

Court of Civil Appeals of Texas, Dallas.

May 16, 1974.

Rehearing Denied June 6, 1974.

John A. Pace, Pace & Chandler, Dallas, for appellants.

George M. McDonald, Kelsoe & Paternostro, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

This appeal is from a judgment of adoption of Susan Ann Smallwood granted to Max J. Swarner, and his wife Marguerite Swarner, the child's maternal grandparents. Kay Smallwood, the child's natural mother, and her husband B. Stanley Smallwood, Jr., the adoptive father, did not consent to the adoption and they appeal from the decree.

Kay Smallwood was first married to Hugh Tankersley. Of that marriage two children were born: Stephen, on January 31, 1959, and Susan Ann, the subject of the present adoption, on September 9, 1961. Stephen was adopted in 1967 by his maternal grandparents, with his mother's consent. In 1966 Kay married B. Stanley Smallwood, Jr., and a year later she consented to the adoption of Susan Ann by

Smallwood. Susan Ann continued to live in the home of her natural mother and adoptive father until on or about May 27, 1971, when she was placed in the home of her maternal grandparents. On June 4, 1973, Mr. and Mrs. Swarner filed their petition for adoption in which they alleged that for more than two years the natural mother and stepfather of said child had not contributed substantially to the support of Susan Ann and for that reason written consent of the natural mother and stepfather was not necessary. Petitioners also alleged that it would be for the best interest of the minor child to live permanently in their home and with her natural brother. The Smallwoods filed an answer contending that custody of the minor child had been placed with the Swarners only temporarily in 1971 solely for the purpose of permitting the child to attend a particular school. The trial judge appointed an attorney ad litem to represent the interests of the minor and also requested and received a report from the chief probation officer of the juvenile department. After hearing lengthy testimony from witnesses, including the minor child and her natural brother, the trial court concluded that it would be in the best interest of said minor child that the petition for adoption be granted. The court made findings of fact and conclusions of law supporting the judgment.

In their second point of error appellants complain of the action of the trial court in refusing to grant them a trial by jury. Appellants argue that by authority of the Seventh Amendment to the Constitution of the United States of America and Article I, Section 15 of the Constitution of Texas, Vernon's Ann.St., they were guaranteed a right of trial by jury. We overrule this contention. In Hickman v. Smith, 238 S.W.2d 838 (Tex.Civ.App.—Austin 1951, writ ref'd), the court correctly stated that the right to trial by jury guaranteed by the Constitution is limited to the right of trial by jury as it existed at common law or as provided by statutes in effect at the adoption of our Constitution

in 1876. Adoption was unknown to the common law. Neither the statutes pertaining to the adoption in 1876 nor the present adoption statutes had or have any provision for a jury trial. Tex.Rev.Civ.Stat. Ann. art. 46a (Vernon 1969) provides that the trial judge, as distinguished from a jury, shall grant or deny a petition for adoption, as in his discretion the rights and welfare of the child may require. *Accord* Fearrington v. Wright, 410 S.W.2d 855 (Tex. Civ.App.—Waco 1967, writ ref'd n. r. e.); In re Adoption of Pate, 449 S.W.2d 372 (Tex.Civ.App.—El Paso 1969, no writ); In re Jones, 475 S.W.2d 817 (Tex.Civ.App. —Eastland 1972, writ ref'd n. r. e.).

While the pleadings originally contained matters relating to custody such issues were severed by the trial court prior to the trial of the issues on adoption. In such a posture of the case the court correctly denied a jury trial.

■■ In their first and sixth points of error appellants argue that the court erred in granting the adoption because there was no evidence or insufficient evidence to support the judgment as required by Tex. Rev.Civ.Stat.Ann. art. 46a, § 6(a) (Vernon 1969). Under these points appellants argue primarily that absent the consent of the natural parents the adoption statute does not grant authority to the juvenile court to award adoption based upon the best interests of the minor. They contend that there was no evidence or insufficient evidence to support the finding that for two years prior to the petition for adoption, they did not contribute substantially to the support of said minor and therefore the statutory exception concerning consent

of the natural parents had not been met. We overrule these points.

Petitioners in the lower court sought adoption of the minor child pursuant to the authority of Tex.Rev.Civ.Stat.Ann. art. 46a, § 6(a) (Vernon 1969).[1] The statute makes two separate exceptions to the general rule that natural parents must consent to the adoption. One exception is abandonment or desertion; the other is failure to support for a period of two (2) years commensurate with financial ability. The first exception is not applicable here. Our question is whether the natural mother and adoptive father have failed to contribute substantially to the support of the minor child for a period of two years so that their written consent is no longer a prerequisite to the child's adoption by petitioning grandparents. The trial court in appropriate findings of fact and conclusions of law found that Mr. and Mrs. Smallwood had not contributed substantially to the support of the child commensurate with their financial ability for a period of two years and that there was no legal arrangement sufficient under the law concerning the placing of the child with the grandparents which would excuse Mr. and Mrs. Smallwood from providing such support and maintenance. The court concluded that it is in the best interest of said child that the petition for adoption be granted and as judge of the juvenile court of Dallas County, Texas he consented to the decree.

We look to the record to determine whether there was evidence to support the findings. We consider it unnecessary to unduly lengthen this opinion by a detailed recitation of the voluminous testimony,

1. Sec. 6(a) Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence . . .

both verbal and documentary, presented to the trial judge. We summarize the essential and material testimony, as follows: Both Mr. and Mrs. Smallwood testified that during the period between May 1971 and May 1973 they were both employed and had a combined gross income of over $10,000 per year. They each testified that during that two-year period while Susan was living in the home of her grandparents they did not pay anything for the cost and care of maintaining the minor child. Mr. Smallwood testified that during that period of time he and his wife offered to give the Swarners some money to help support the minor but that such offer had been refused. When pressed concerning this matter, Smallwood admitted that he did not have any checks to evidence any money that he had tendered to the Swarners which they had refused to accept. Mrs. Smallwood said that at one time she asked her father Mr. Swarner, if he needed financial help to take care of Susan and was told that such help was not needed.

In justification for that admitted failure to contribute to the support of Susan during the two-year period both the Smallwoods testified that early in 1971 they entered into an agreement with Mr. and Mrs. Swarner whereby the Swarners would take Susan into their home temporarily and send her to a school in the Highland Park Independent School District. As a part of this arrangement they were not to be obligated for any part of Susan's care and maintenance since the Swarners were well able to take care of the child without their help. They testified that Susan was to return to their home each weekend and it was never their intention nor part of the arrangement that Susan was to remain permanently in the Swarner home.

Both Mr. and Mrs. Swarner testified that they had provided a majority of the food, clothing and shelter for the child Susan since her birth and that since May 1971 they had supplied all of her support. They testified that neither Mr. or Mrs.

Smallwood had ever offered to contribute anything to their cost of the maintenance and care of the child during the two-year period, but that had any offers of financial help been made, they would have accepted same. They denied that they had ever advised the Smallwoods that they did not need any help to take care of the child. The Swarners expressly denied that they had entered into any agreement or arrangement with the Smallwoods whereby Susan would be placed only temporarily in their home in the early part of 1971. Mrs. Swarner said that her daughter Kay seemed indifferent toward the child and did not seem to want the responsibility and as a result Mrs. Swarner took the child into her home and entered her in school. She further testified that this was the only reason that Susan was living with them. She further said that Kay Smallwood did not come to pick up the child regularly on weekends. Both the Swarners testified concerning the good quality of the home owned by them and expressed the opinion that it would be to the best interest of the little girl to continue to live with them in their home and with her natural brother. Mrs. Swarner's testimony was substantiated in large part by her father, Seymore Tillman.

Dr. William M. Lovejoy, a licensed psychiatrist, testified that he had seen and examined Mr. and Mrs. Swarner as well as the minor child Susan. He said that the child seemed to be on very good terms with her grandparents and that she was at ease with them but that her attitude and demeanor toward Mr. and Mrs. Smallwood was entirely different and unsatisfactory. He said that the child was afraid of being returned to the home of the Smallwoods because of harrassment about her weight, which caused her humiliation. The doctor said that he gained the impression that the girl felt that she did not have a home of her own, that her brother had a home, and that she definitely preferred to live with her grandparents and her natural brother.

Based on his examination of these people, the doctor gave his opinion that it would be in the best interest of the child that she be placed in the home of her grandparents.

Susan's fourteen-year-old brother testified that he loved his sister and wanted her to come and live with him and his grandparents. The minor child, Susan, testified that she wanted her grandparents to adopt her because she was happy in their home. She said that she was not happy in the home of her parents because there was a lot of "fussing and fighting," which made her nervous. She said she always got frightened when she went to her parents' house because they were always fighting during the night and she could not get any sleep.

It is quite apparent from the record that there is ample evidence of probative force to support the findings of fact made by the trial judge in support of his judgment. We cannot say that the findings were contrary to the great weight and preponderance of the evidence. The trial court heard conflicting testimony from the parties and other witnesses and elected to accept the testimony tendered by appellees. It is not for us to substitute our judgment for that of the trial judge who has had an opportunity to see and hear the witnesses and to weigh their testimony.

Appellants place great reliance upon the opinion of the Supreme Court in Heard v. Bauman, 443 S.W.2d 715 (Tex.1969). Having carefully read and considered that case, we are of the opinion that the facts therein are clearly distinguishable from those in the instant case so that the principles of law enunciated therein are not controlling here. In that adoption proceeding the grandmother and her husband sought to adopt four minor children alleging that the natural mother had not complied with Tex.Rev.Civ.Stat.Ann. art. 46a, § 6 (Vernon 1969). The decree of adoption granted by the trial court was reversed on appeal. The evidence in that case revealed without dispute that the mother, who had been having marital difficulty with her second husband, and having received no funds from either the father of the children or her second husband, made arrangements to leave the children with the grandparents. She was unemployed part of the time and when employed she only earned approximately $37.50 per week. This testimony was not controverted and the Supreme Court held that there was no evidence that the mother intended to do anything other than to provide a temporary home for the children and was justified in not contributing to their support because of her financial inability to do so.

The facts in the present case are entirely different. The father and mother were well able to contribute to the child's support but admittedly did not do so for a period of two years. The testimony concerning the arrangement to leave the child with the grandparents only temporarily was conflicting and the trial court elected not to believe the testimony of the natural mother and her husband. Under these circumstances we feel that the case falls clearly within the rule in Lout v. Whitehead, 415 S.W.2d 403 (Tex.1967) wherein the court held that where the evidence established a two-year period of unexcused nonsupport the trial court's judgment of adoption would be upheld.

The record here reveals that the petitioning grandparents not only sustain their burden of producing ample evidence to support the statutory exception concerning nonsupport but also to support the trial court's finding that it would be to the best interest of the minor child that the petition for adoption be granted. The Supreme Court in Davis v. Collins, 147 Tex. 418, 216 S.W.2d 807 (1949), held that the rights and welfare of the child involved are the paramount things to be considered in both adoption as well as child custody cases. In Rubey v. Kuehn, 440 S.W.2d 95 (Tex.Civ.

App.—Houston [1st Dist.] 1969, writ ref'd) the court, in considering a case involving very similar facts to those in the instant case, emphasized the right of the juvenile judge to exercise discretion in determining the granting of adoption. The court stated that in the exercise of this discretion the juvenile judge should consider the natural rights of the nonconsenting parent and the best interest and welfare of the child. While this discretion is subject to review for abuse the court pointed out that the appellant court would not substitute its judgment for that of the trial court merely because such court might have reached a different conclusion. To the same effect see Homfeld v. Pence, 487 S. W.2d 224 (Tex.Civ.App.—El Paso 1972, no writ); Alexander v. Clower, 486 S.W.2d 189 (Tex.Civ.App.—Tyler 1972, no writ); In re Jones, 475 S.W.2d 817 (Tex.Civ.App. —Eastland 1972, writ ref'd n. r. e.); Drieth v. Lightfoot, 446 S.W.2d 390 (Tex. Civ.App.—Waco 1969, writ ref'd n. r. e.).

We find no abuse of discretion on the part of the trial court in this case.

■ By their fourth point of error appellants complain of the action of the trial court in rendering judgment against them for the fee awarded the attorney ad litem representing the minor child. This fee was included in the court costs which were adjudged to be paid by appellants. Again, the court exercised its discretion in adjudging costs, including a reasonable fee for the attorney representing the minor child, and we find no abuse of such discretion. The point is overruled.

We have carefully reviewed all of the points advanced by appellants and find the same to be without merit and they are therefore overruled.

The judgment of the trial court is affirmed.