Robert Raymond BELITZ, Appellant,

v.

Lana J. SEEKATZ et vir., Appellees.

No. 5823.

Court of Civil Appeals of Texas, Waco.

Aug. 10, 1978.

Rehearing Denied Aug. 31, 1978.

Sally L. Ray and Robert N. Udashen, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, for appellant.

William F. Stolhandske and Randall B. Richards, Stolhandske, Simmons & Stolhandske, San Antonio, for appellees.

HALL, Justice.

Judgment was rendered terminating the parent-child relationship between appellant Robert Raymond Belitz (hereinafter referred to as "defendant") and his minor son, Bobby Ray Belitz. Defendant appeals. We affirm the judgment.

Mrs. Lana J. Seekatz is the natural mother of the child. Defendant Belitz is the natural father. The child was born during their marriage. They were later divorced. Mrs. Seekatz and her present husband, Fred H. Seekatz (hereinafter "plaintiffs") filed this suit on October 7, 1976, to terminate the parent-child relationship between defendant and the child, and for adoption of the child by Mr. Seekatz, alleging as grounds for the termination that defendant failed to support the child in accordance with his ability during a period of "six years" ending within six months of the date of the filing of the petition, and that the termination was in the best interest of the child.

Defendant answered plaintiffs' suit on November 1, 1976, alleging that since November, 1969, he had been continuously incarcerated in jail and in the penitentiary without income; and that, otherwise, he would have supported the child.

On December 7, 1976, plaintiffs filed an amended petition in which they again alleged as grounds for the termination that defendant failed to support the child in accordance with his ability during a period of "six years" ending within six months of the date of the filing of the petition, and that the termination is in the best interest of the child. Additionally, the amended petition contained these pleadings:

"And as further grounds for termination, Petitioners allege that [defendant] committed certain willful criminal acts and engaged in a course of conduct which implied a conscious disregard and indifference to his child in respect to his parental obligations and his imprisonment constitutes voluntary abandonment of this child."

The case went to trial on December 13, 1976, on plaintiffs' amended petition, and, after a hearing without a jury, judgment was rendered terminating the relationship of parent and child between defendant and the child. In support of the judgment, the court made and filed the following findings of fact:

1. Defendant knowingly engaged in conduct which endangered the physical and emotional well-being of the child.
2. Defendant failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition for termination.

3. Defendant failed to support the child in accordance with his ability for a period of six years ending within six months of the date of the filing of the petition.

4. The termination would be in the best interest of the child.

Among other grounds set forth in V.T.C.A., Family Code § 15.02, for involuntary termination of the parent-child relationship, are provisions for terminating the relationship if the court finds that:

"(1) the parent has

(E) engaged in conduct . . . which endangers the physical or emotional well-being of the child; or

(F) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition;

. . . . .

and in addition, the court further finds that

"(2) termination is in the best interest of the child."

■ In Family Code § 11.08(b)(10) it it provided that the petition in a suit affecting the parent-child relationship must include a statement describing what action the court is requested to make concerning the child and "the statutory grounds on which the request is made." Under defendant's construction of that statute it is asserted that plaintiffs' pleadings are not sufficiently specific to invoke the provisions of subsections (E) and (F) of Family Code § 15.02(1), and that, accordingly, the court's findings based upon those subsections are not supported by pleadings. Particularly, defendant argues that because plaintiffs alleged non-support for "six years" he was not given fair notice required by Rule 47, Vernon's Tex.Rules Civ.Proc., that he should be expected to defend against a claim of non-support for "one year" as provided in § 15.02(1)(F). Defendant did not except to plaintiffs' petition. It is the rule that in the absence of special exceptions pleadings will be liberally construed in the

pleader's favor and to support the judgment. *Scott v. Gardner,* 137 Tex. 628, 156 S.W.2d 513, 515 (1941). Plaintiffs' pleading of "six years ending within six months of the date of the filing of the petition" necessarily included "one year" ending within the stated time. Absent exceptions to the pleading, we hold it sufficiently invoked the provisions of § 15.02(1)(F) and placed defendant on notice of that fact. However, we sustain defendant's contention that plaintiffs' pleadings do not set forth a claim for relief under § 15.02(1)(E).

■ Appellant asserts the evidence is legally insufficient to support the findings that he failed to support the child "in accordance with his ability" for the periods of either six years or one year ending within six months of the date of filing of plaintiffs' petition. We agree with defendant on the six-year period, but we overrule his contention on the one-year term.

The evidence shows that defendant and Mrs. Seekatz were married in March, 1964. The child was born on December 24, 1967. Defendant would not work and support his family. When the child was four months old, defendant spanked him so hard "because he was crying and wouldn't be quiet" that the child's buttocks became "completely black and blue." During a "violent argument" between Mrs. Seekatz and defendant in July, 1968, defendant grabbed her by the throat and began beating her. The child was on the floor, "watching it all and crying and screaming and afraid." Neighbors called the police, and Mrs. Seekatz left the house "under police protection." She and the child permanently separated from defendant at that time. Defendant did not thereafter contribute anything to the support of the child or Mrs. Seekatz, nor attempt any contact with the child. Mrs. Seekatz moved into the home of her mother and fourteen-year-old sister. Defendant continued living in the parties' house, and later two women moved in with him. Defendant was employed at that time. In August, 1968, defendant stealthily entered the home of Mrs. Seekatz's mother and assaulted the fourteen-year-old sister with

his fists while she was asleep in bed. (While testifying defendant denied that his motive was rape, but he gave no reason for the assault). Mrs. Seekatz was not present at the time, but her mother came to the aid of the sister, and this altercation ended with defendant shooting at Mrs. Seekatz's mother when she was trying to telephone the police. At the time of the shooting the child was being held by the sister and was crying hysterically. When Mrs. Seekatz separated from defendant in July, 1968, she filed suit for divorce. The divorce was granted in January, 1969. While the divorce action was pending, defendant was under court order to make child support payments, but he did not do so, even though he was employed during part of that period. In November, 1968, defendant was placed in jail on charges of first degree murder and two charges of attempted murder of police officers. He is now in the penitentiary on convictions of those three offenses, plus an additional offense of attempted jail break. He testified that the punishments assessed on the offenses were ordered to be served consecutively, that he is under a sentence of "2 to 198 years," and that his first eligibility for parole consideration will be in January, 1981. Defendant was also charged with five armed robberies of liquor stores which he committed on the same day he committed the murder. Defendant was also convicted of theft while he and Mrs. Seekatz were married. Defendant has been continuously incarcerated since November, 1968, when he was placed in jail. At that time he was drawing $45.00 weekly for workmen's compensation. When he was in jail, he settled the workmen's compensation claim for $1,600.00. Neither the weekly benefits nor the settlement were used by defendant for support of the child or Mrs. Seekatz. He testified that he used the settlement to pay the fee of the lawyer who represented him on the workmen's compensation claim, and to pay bills incurred while he was married to Mrs. Seekatz including $400.00 to his parents. During the two and one-half years immediately prior to the trial of this case, defendant had an income of $25.00 per month from the sale of paintings

by him. He admitted that under penitentiary rules he is privileged to send the child letters, money, and gifts, but that he has never done so. His excuse for this failure was that Mrs. Seekatz's parents had told him "she wouldn't allow it." He admitted, however, that he had never attempted to do so. He testified that he spends a part of the $25.00 monthly income for coffee, cigarettes, and toothpaste, and for incidental paint supplies. He estimated his net income over the 2½ year period to be closer to $400.00 than $750.00, but he admitted that his income has exceeded his expenditures. When asked how he "got along" prior to the time he began selling paintings, he said that his family then sent him $5.00 per month, but that prices on everything in the penitentiary have since "doubled."

▮ Of course, defendant's basic necessities of food, shelter, bed, and clothing while he is in the penitentiary are furnished by the State. The court, as trier of the facts, was justified under the proof in believing that during the 2½ years prior to trial defendant's income exceeded his expenses by $10.00 to $15.00 per month. The court was also entitled to reject defendant's excuse for failing to use this money for the welfare of the child, and to believe that the failure was based upon a wholly negative, disinterested, and irresponsible attitude toward the child by defendant which existed prior to defendant's incarceration.

We hold the evidence is legally sufficient to support the finding that defendant failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of plaintiffs' petition.

▮ Mr. and Mrs. Seekatz married on March 17, 1972. The evidence shows that the child and Mr. Seekatz love each other; that they "have a very natural relationship" of father and son, rather than one of stepfather and step-son; that the child believes Mr. Seekatz is his father and "looks to him as a father"; and that the child has never asked about his real father and does not know he is alive. This evidence and the

proof of defendant's violent nature, his lack of interest in the welfare of the child, and his present imprisonment under a long-term sentence, support the finding that the termination is in the best interest of the child.

As shown above, plaintiffs alleged as grounds for termination that defendant "committed certain willful criminal acts and engaged in a course of conduct which implied a conscious disregard and indifference to his child in respect to his parental obligations and his imprisonment constitutes voluntary abandonment of this child." Plaintiffs assert those pleadings and an implied finding thereon are proved and supported by the evidence.

In *Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex.Sup.1976), the Court stated that the list of grounds set forth in Family Code § 15.02 for terminating the parent-child relationship "may not be an exclusive one." Plaintiffs say it is not exclusive. They argue that their allegation that defendant voluntarily abandoned the child is an additional ground, not listed in the statute, which supports the termination order in question. Plaintiffs concede that a parent's imprisonment does not *per se* constitute abandonment of his child, but they contend that when it results from the circumstances they have alleged and proved against defendant it is sufficient to support a finding of voluntary abandonment and severance of the parent-child relationship. They cite holdings in *Hutson v. Haggard,* 475 S.W.2d 330 (Tex.Civ.App.—Beaumont 1971, no writ); and *Jordan v. Hancock,* 508 S.W.2d 878 (Tex.Civ.App.—Houston [14th] 1974, no writ), which were decided under old Article 46a, Vernon's Tex.Civ.St.

In view of our holding that the termination order was proper under § 15.02(1)(F) of the Family Code, we need not decide whether it is also supported by defendant's pleading of "voluntary abandonment." For the same reason, we do not decide the remaining questions raised by the parties and the record, including whether the issue upon which the court based its finding that defendant knowingly engaged in conduct which endangered the physical and emo-

tional well-being of the child was tried by the defendant's consent without pleadings under Rule 67, Vernon's Tex.Rules Civ. Proc., and whether the evidence is legally sufficient to support that finding.

The judgment is affirmed.