**In the Interest of W.E.R., A child.**

**No. 16765.**

Court of Appeals of Texas,
San Antonio.

Dec. 21, 1983.

Rehearing Denied Jan. 13, 1984.

John W. Claybrook, Eagle Pass, for appellant.

W.J. Sames, III, Eagle Pass, John L. Specia, Jr., Texas Dept. of Human Resources, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and REEVES, JJ.

---

## OPINION

ESQUIVEL, Justice.

Appellant, an unmarried man 47 years old, appeals from the denial of his application to adopt a boy who, at the time of the hearing, was about one year old. Appellant claims that the trial court abused its discretion in denying his application solely on the ground he is unmarried. We agree.

The discretion of the trial court in granting or denying an adoption petition is subject to review for abuse. *Rubey v. Kuehn*, 440 S.W.2d 95, 99 (Tex.Civ.App.— Houston [1st Dist.] 1969, writ ref'd).

The court made the following statement at the close of the evidence, after terminating the natural mother and father's relationship with the child:

> *I am, however, going to deny the adoption* of the child by Petitioner, *and it is no reflection on your part, Dr. Batres.* In fact, you are to be commended for the interest you've shown this child.
>
> \* \* \* \* \* \*
>
> But we are talking about a child, who on the 13th of October is going to be one-year old, and I think the proper thing to do is to have the child placed in the managing conservatorship of *the Department of Human Resources,* who *can see to it that the child is placed where there is a mother and father relationship* to the child, *and there would be a proper family type rearing for this child.*
>
> *I want to emphasize though, that that is the reason for the Court respectfully denying Petitioner's application* for leave to adopt this child, and *I feel it is our responsibility to provide both a mother and father* in direct relationship to the child. [Emphasis ours.]

It is clear from the above quoted passage that the court denied appellant's petition for adoption because it determined that appellant could not "provide both a mother and a father in direct relationship to the child." From the evidence, we can reach no other conclusion but that the court arrived at this determination based solely upon appellant's marital status.

In an adoption in Texas, the granting or denial of an adoption is predicated on whether the adoption is in the "best interest of the child." TEX.FAM.CODE ANN. § 16.08 (Vernon 1975). Any adult in Texas may adopt an adoptable child. *Id.* § 16.02 (Vernon Supp.1982–1983). The statute says nothing about a one-parent versus a two-parent home.

The court implied that because appellant was a single man, his house was not a home where both a mother and a father relationship could exist and, therefore, was an "[im]proper" family situation. We are not saying that the adoption should have been granted, rather, that the court used an impermissible standard by which to arrive at its best-interest-of-the-child determination.

Neither should this court be heard to say that every time a single adult seeks to adopt a child, such adoption should be granted. Rather, one should not be denied the ability to adopt merely because one is single.

On remand, the appellant may not succeed in adopting the child, for any number of various reasons, including the passage of time. We feel, however, he should be given the opportunity inasmuch as he was denied the adoption for a reason which, standing alone, was unwarranted.

We find that the trial court abused its discretion in denying the adoption solely on the basis of the appellant's marital status. Since we cannot substitute our judgment for that of the trial court, we reverse the judgment of the trial court and remand the cause for a new hearing. *In the Interest of Herd,* 537 S.W.2d 950, 954 (Tex.Civ.App.— Amarillo 1976, writ ref'd n.r.e.); *Rubey, supra,* at 99.

CADENA, Chief Justice, dissenting.

Appellant's sole contention is that his petition for leave to adopt the child in question was denied solely because he is not married. This conclusion is based on the propositions that (1) the evidence conclusively establishes his "total qualifications as an adoptive parent"; (2) the "uncontrovert-

ed evidence" supports the conclusion that the granting of appellant's petition for adoption would be in the best interest of the child; (3) there is no evidence that the adoption would not be in the best interest of the child; and (4) there is no evidence that appellant is not a fit and proper person to adopt such child.

In an adoption case, the appellate court may set aside the trial court's ruling only if the record reveals an abuse of discretion by the trial court. *In the Interest of Herd*, 537 S.W.2d 950, 953 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). This means that the reviewing court may not simply substitute its judgment for that of the trial court, but may reverse only when the trial court's judgment was arbitrary or unreasonable. *Pratt v. Texas Department of Human Resources*, 614 S.W.2d 490, 494 (Tex.Civ.App. —Amarillo 1981, writ ref'd n.r.e.). It seems clear that an "abuse of discretion" can be found only where the judgment under review is so palpably and grossly violative of fact and logic that it evidences not exercise of will but perversity of will, not exercise of judgment but defiance of judgment, not exercise of reason but rather a display of passion or bias. Discretion is abused where the action is unreasonable, unconscionable and arbitrary and is taken without proper consideration of the facts and the law.

As in any other case, the movant in an adoption proceeding must establish that permitting the adoption would be in the best interest of the child. In this Court, then, appellant has the burden of showing that the evidence conclusively established that the granting of his application would be in the best interest of the child, or, at least, showing that the trial court's contrary conclusion was against the overwhelming weight and preponderance of the evidence.

The majority's conclusion that the trial court's conclusion that the child should be in a home "where there is a father and mother relationship to the child" and that it is the court's responsibility "to provide both a mother and father in direct relationship to the child" permits no interpretation other than that leave to adopt was denied solely

because appellant is unmarried. This conclusion, the majority opinion assures us, is compelled by "the evidence." Unfortunately, the evidence which mandates such conclusion is not set out in the majority opinion.

The comments of the trial court do not compel, or even justify, the conclusion reached by the majority. The court spoke of a "proper family type rearing for this child." The references to "father" and "mother," when considered in context, reflect that the court's ruling is based on the premise that, in the case of this child, a two-parent home, rather than a one-parent home, should be provided. The court spoke of a father and mother "in direct relationship to the child." Nothing was said concerning the relationship of the father and mother to each other, and it is not possible to construe the statement as establishing the need that there be a relationship, either by blood or affinity" between the two persons occupying the parental roles.

While it is true that there is authoritative support for the notion that one parent can adequately meet a childs needs, this theory does not enjoy universal acceptance. There are recognized authorities who insist that one parent cannot adequately fill the child's needs. Those who contend that a one-parent home is adequate argue that the basic emotional need of a child is for "mothering," and that this need can be met by one parent, regardless of that parent's gender. The opponents of this view argue that, in addition to the fact that two parents can give the child more love than can one, a child needs both a male and female role in the home. Comment, *Unwed Fathers in the Adoption Process*, 22 WM. & MARY L.REV. 85, 104 (1980).

In view of the disagreement on the question, it cannot be said that the trial court's preference for a two-parent home was arbitrary or capricious.

There is nothing in the record to support the conclusion that the trial court was of the opinion that adoption by a single person would, *per se*, not be in the best interests of the child. The trial court did not say so,

and there is no evidence from any source indicating advocacy of a theory which would limit the right to adopt to married persons. Proponents of the two-parent theory merely insist that there be both a female and a male role model in the home. The models may be furnished by a mother and son, an aunt and nephew, a brother and sister or, perhaps by a male and female who are in no way related. The majority's assumption that the trial court was insisting on a marital relationship between the "father" model and the "mother" model is entirely gratuitous.

In order to determine the true basis for the court's ruling, it is necessary to review the evidence which the majority opinion fails to discuss.

Appellant, aged 45, is a medical doctor who practices his profession in Eagle Pass, Texas. He owns a home in Piedras Negras, State of Coahuila, Mexico, and an apartment building in Eagle Pass. Part of the time he "stays" in his house in Piedras Negras, where his mother and sister also live. He spends at least two nights a week in an apartment in the building which he owns in Eagle Pass. This occurs whenever he is "on call" as a member of the staff of the hospital in Eagle Pass. The child is always at the place where he spends the night, whether that be in Piedras Negras or Eagle Pass. When he spends the night in Piedras Negras, either his mother or sister take care of the child. Neither his mother nor sister accompany him and the child to Eagle Pass. He testified that if he is called away from the Eagle Pass apartment "or something," there is always "someone downstairs" in the apartment building with whom he can "leave the baby." Since appellant has a thriving medical practice, it may be safely assumed he is not with the child during the day. There is nothing in the record to indicate whether the person "downstairs" is always the same person or a male or female. He loves the child very much and there can be no doubt of his ability to meet the child's financial needs.

The child has been with appellant since a few days after the baby's birth. He attend-ed the mother, apparently an unwed woman from Mexico, during her pregnancy. She did not reveal the name of the child's father, and efforts to locate the father and mother have been fruitless. The mother told appellant that she did not want the child and that she wished he would find someone to adopt the baby. He was the doctor in attendance at the time of delivery and eventually took the child to his home in Piedras Negras.

Neither the appellant's mother nor sister testified. The record reveals nothing concerning conditions at the Piedras Negras home, nor does it furnish any basis for determining whether appellant's mother or sister plays the chief role in caring for the child.

The social worker who was appointed to make the pre-adoption investigation testified, and her report was introduced in evidence and could be considered by the trial judge. *Green v. Remling*, 608 S.W.2d 905, 909 (Tex.1980).

The social worker testified that, in a case where both parents work, she did not find "anything wrong with these parents leaving the child with another responsible adult while they were working" but this answer was qualified by her state that "there is nothing wrong" with such an arrangement if the investigation revealed that the child was receiving "adequate care." She saw the child for a short time, in the presence of appellant and his mother, and the child "appeared to be within normal development for his age." Appellant and his mother "seemed" to have a loving relationship with the child.

The investigator did not visit the home in Piedras Negras, and her report tells nothing concerning conditions there. She did visit the apartment in Eagle Pass. Although she saw a crib, the crib mattress had no sheets on it and she saw no baby food, baby formula, baby bottles or toys. The furniture was dusty and in such disarray that there "was hardly space to walk around." Appellant told her that the furniture was out of place because the apartment was in the process of being remodelled. The investiga-

tor's visit to the apartment took place some five or six months after, according to appellant, the remodelling had begun, so that the child had been living in such conditions for more than half of its life.

Several persons told the investigator that appellant's medical practice was such that he would not be able to spend much time with the child, although one person "felt" that appellant would have contact with the child "for a couple of hours, such as when he may take [the child] to the movies." There is no evidence that appellant ever took the child to the movies.

A registered nurse told the investigator that "appellant is an excellent person, regardless of what his other life may be, and, as a doctor, he is tops." The reference to appellant's "other life" is unexplained.

The investigator recommended against granting the petition for adoption because, in her opinion, appellant is a very busy man and "will not be parenting" the child.

It cannot be said that the evidence conclusively establishes the existence of a stable family environment and that it establishes as a matter of law that granting appellant's petition would be in the best interest of the child. Nor can it be said that the evidence is such that a conclusion that the adoption would be in the best interest of the child is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. The evidence does little more than to establish that appellant and his mother love the child. It does not establish that the conditions under which the child lives while he is with appellant in the Eagle Pass apartment constitute a proper environment. What evidence there is indicates the contrary. After reading the record, one knows nothing about the conditions under which the child lives while he is staying in Piedras Negras. Even if it be assumed, despite the absence of evidence, that appellant's mother and sister actually stand in the relation of "mother" to the child, the evidence establishes that this relationship is subject to a regular weekly interruption for about one-third of the time when the child is in the Eagle Pass apartment.

Even if we accept the "one-parent" theory unquestioningly there is evidence that appellant is such a successful medical practitioner that he would not have time to meet the child's need for "fathering," much less the need for "mothering." Appellant's inability to meet the child's emotional needs has nothing to do with his marital status, but is the result of his lack of time.

Under these circumstances, the conclusion that the trial court abused his discretion is untenable.